# HUGH RAYCROFT

## v.

## E. M. TAYNTOR.

JANUARY TERM, 1896.

*Doing of lawful act with malice does not give right of action.*

1.  If one be moved by malice to the exercise of a legal right no action arises.
2.  The defendant was in the full management of a granite quarry as superintendent, and as such had entered into a contract with one Libersont that he might cut paving blocks upon the quarry for a time terminable at the will of either party. Libersont hired the plaintiff to work for him about the business. The defendant became angry with the plaintiff, directed Libersont to discharge him, and threatened to terminate Libersont's contract if he did not, in consequence of which Libersont did discharge the plaintiff. *Held*, that that the plaintiff had not thereby a right of action, although the defendant's act was malicious.

Action on the case. Plea, the general issue. Trial by jury at the March term, 1895, Washington county, START, J., presiding. Verdict and judgment for the plaintiff. The defendant excepts.

*J. P. Lamson* for the defendant.

The defendant had the legal right to compel Libersont to leave the premises, and no action arises from the exercise of a

legal right with malice. *Hayward* v. *Tillson*, 75 Me. 225.

*John W. Gordon* and *Richard A. Hoar* for the plaintiff.

The defendant was an entire stranger to the contract between the plaintiff and Libersont, and his malicious interference with it was actionable. *Chipley* v. *Atkinson*, 23 Fla. 206; *Lucke* v. *Cutters' Assembly*, 77 Md. 386; *White* v. *Merritt*, 7 N. Y. 352; *Bowen* v. *Hall*, 6 Q. B. Div. 333; *Lumley* v. *Guy*, 2 E. & B. 215; *Rice* v. *Manley*, 66 N. Y. 82; *Walker* v. *Cronin*, 107 Mass. 555, 556; *Benton* v. *Pratt*, 2 Wend. 385; *Haskins* v. *Royster*, 70 N. C. 601; *State* v. *Stewart*, 59 Vt. 273; *State* v. *Dyer*, 67 Vt. 690.

ROSS, C. J.   At the close of the testimony the defendant requested the court to direct the jury to return a verdict in his favor, and excepted to its failure to comply with this request.   He also excepted to that portion of the charge of the court set out in the exceptions.   These exceptions raise the same question.   He contends that the defendant's relation to the business and property of C. E. Tayntor was such that no liability arose from his acts, of which the plaintiff complains.   C. E. Tayntor owned and operated a granite quarry, in the fall of 1891, and therein employed from sixty to ninety workmen.   He resided in New York and spent very little time at the quarry.

The defendant was the manager and superintendent of his business, employed and discharged the help, paid them, purchased supplies and anything needed in the business.   A man by the name of Libersont obtained from the defendant leave to go upon the quarry and cut some of the poor granite into paving stone on paying an agreed price therefor.   This contract was for no definite period and was terminable at the pleasure of the defendant.   Libersont had the right to leave the work at pleasure.   He expected, if no difficulty

arose, to continue the work through the winter. The plaintiff came to work for Libersont by the hour, with an understanding, if they got along well together, that he could work through the winter. Either party could end this arrangement at his pleasure.

While the arrangement was existing between the plaintiff and Libersont, the plaintiff purchased the standing trees on a piece of land adjoining the quarry on which was a small spring. C. E. Tayntor, to obtain the spring for the use of the quarry, through the defendant purchased the land on which it was located and on which the trees which the plaintiff had purchased stood. The plaintiff had cut some of the trees. The defendant, acting for C. E. Tayntor, purchased from the plaintiff what trees there were then standing on this piece of land about the spring. When the defendant was paying the plaintiff for the trees a difficulty arose over the terms of a receipt which the defendant asked the plaintiff to sign. As the plaintiff's testimony tended to show, the defendant became very angry, ordered the plaintiff to leave the premises, and added that he would go to Libersont and get him discharged; that he did go to Libersont and tell him, that if he did not discharge the plaintiff, he could no longer cut paving blocks on the premises. Libersont informed the defendant of his arrangement with the plaintiff, that the plaintiff was satisfactory to him, and that he did not want to discharge him. The defendant insisted that he must discharge the plaintiff or leave the works. Libersont thereupon, and because the defendant demanded he should do so or leave, discharged the plaintiff.

The evidence tended to show that the plaintiff was not able that winter to procure another place where he could obtain as good wages as Libersont was paying him. The court in substance charged, that, notwithstanding the defendant, as superintendent and manager for C. E. Tayntor, had the right to terminate the contract with Libersont, at

pleasure, and without having any reason for so doing, and Libersont had the right to dismiss the plaintiff at his pleasure, yet if his dismissal was brought about by the defendant's threat to terminate Libersont's right to remain on the quarry and cut paving stone, and this action of the defendant was malicious and occasioned damage to the plaintiff, the action could be maintained. The court did not define to the jury what constitutes legal or actionable malice. It is evident that if the defendant in the capacity which he sustained to the quarry, actuated by hatred and ill will, or for any other course had terminated the contract with Libersont and compelled him to leave the quarry, Libersont could have maintained no action therefor, although it was shown to be to his pecuniary detriment. By so doing the defendant would be exercising a legal right, resting in him as superintendent and manager of the business.

When one exercises a legal right only, the motive which actuates him is immaterial. If the defendant had exercised this right, and Libersont had left the quarry, the plaintiff would have had to leave working on the quarry also. He had acquired his right to work on the quarry under the right which the defendant, as superintendent and manager, had conferred on Libersont, hence the plaintiff's right to remain and work there for Libersont, being derived from the right which the defendant in his capacity of superintendent and manager had confered upon Libersont was not superior to the right of Libersont. If the defendant had done what he threatened to do, discharged Libersont for the express purpose of removing the plaintiff from the quarry, and if he would have incurred no liability, whatever may have been his motive for the act, it is difficult to discover how his threat to do this act, if Libersont did not discharge the plaintiff, can give a right of action to the plaintiff, who had no right to remain at work on the quarry except what had been conferred by Libersont.

The stream cannot rise higher than its source. The charge, excepted to, treats the defendant as an intermeddler, and without right to determine who should remain and work on the quarry. On the undisputed facts in regard to determining who might remain and work upon the quarry, he was clothed with all the right and power of the owner. The authorities cited for the plaintiff clearly establish that if the defendant without having any lawful right, or by an act, or threat *aliunde* the exercise of a lawful right, had broken up the contract relation existing between the plaintiff and Libersont, maliciously or unlawfully, although such relation could be terminated at the pleasure of either, and damage had thereby been occasioned, the party damaged could have maintained an action against the defendant therefor. But the same authorities clearly establish, that if the defendant's act, or threatened act, was one which in his relation to the property and parties, he had a lawful right to perform unless it involved a superior right of the plaintiff, gave the plaintiff no right of action, though it occasioned a loss to him and was actuated by a desire to injure.

As said in *Walker* v. *Cronin*, 107 Mass. 554. : "Accordingly it is generally held that no action will lie against one for acts done upon his own land in the exercise of his rights of ownership, whatever the motive, if they merely deprive another of advantages or cause a loss to him without violating any legal right, that is, the motive, is immaterial." *Frozen* v. *Brown*, 12 Ohio 294 ; *Chatfield* v. *Wilson*, 28 Vt. 49 ; *Mahan* v. *Brown*, 13 Wend. 261 ; *Delhi* v. *Ganamous*, 50 Barb. 316. A similar decision is *Wheatley* v. *Bauch*, 25 Penn. 528, but the suggestion in *Greenleaf* v. *Francis*, 18 Pick. 118 was approved so far as this, namely, "that malicious acts without the justification of any right, that is, acts of a stranger resulting in the loss or damage might be actionable" * * * "If disturbance or loss come as a result of competition, or the exercise of like rights by

others, it is *damnum absque injuria* unless some superior right by contract or otherwise is interfered with."

So, too, in *Chipley* v. *Atkinson*, 23 Fla. 206, 11 Am. St. R. 370, it is said "Where one does an act which is legal in itself, and violates no right of another person, it is true that the fact that the act is done from malice or other bad motive toward another does not give the latter a right of action against the former. Though there be loss or damage resulting to the other from the act and the doer was prompted to it solely by malice, yet if the act be legal and violates no legal right of the other person, there is no right of action." In support of this doctrine a large number of decisions are cited, and among them *Chatfield* v. *Wilson*, 28 Vt. 49; *South Royalton Bank* v. *Suffolk Bank*, 27 Vt. 505; *Harwood* v. *Benton*, 32 Vt. 724.

Wm. L. Hodge in Jan. and Feb. Nos. of Am. Law Review, in an article on "wrongful interference by third parties with the rights of employees and employed" reviews a great number of cases and on page 54 says : "So also it is said, and there are indeed many authorities which appear to hold, that to constitute an actionable wrong, there must be a violation of some definite legal right of the plaintiff. But these are cases for the most part, at least, where the defendants were themselves acting in the lawful exercise of some distinct right which furnished the defense of a justifiable cause for their acts except so far as they are in violation of a *superior right in another*. Therefore, if the defendant's act be, (1) Legal in itself, and (2) violates no superior right in another, it is not actionable although it be done maliciously and cause damage to that other."

On the doctrine of these authorities, cited by the plaintiff, the threatened act of the defendant was one which in his relation to the business of the quarry and Libersont, he had the legal right to do, and it would violate no superior right

of the plaintiff.    The  court should  have  ordered the verdict
as requested at the close of the evidence.

*Judgment reversed and cause remanded.*