. THE LONDON GUARANTEE AND ACCIDENT COMPANY

*v.*

GUSTAVE HORN.

*Opinion filed December 16, 1903—Rehearing denied February 3, 1904.*

1. MALICE—*malice defined.* Malice, in its legal sense, means a wrongful act done intentionally, without just cause or excuse; the willful violation of a known right.

2. SAME—*what will justify procuring discharge of a servant.* While competition in trade, employment or business, using the term in its ordinary meaning, may be a sufficient justification, in law, for procuring the discharge of another from employment, the mere fact that the person procuring such discharge has a temporal or pecuniary interest to be served by the act is not such justification.

3. ACTIONS AND DEFENSES—*when action lies against third party for procuring plaintiff's discharge.* One whose discharge from employment is procured by a third party has a right of action against such party, where the employment, although terminable at will, would have continued indefinitely but for his interference, and where his only motive was to injure the employee because the latter refused to release a cause of action, unconnected with the continuance of the employment, for which such third party was liable.

4. CONTRACTS—*when an act by a guarantee company is not within its rights.* A guarantee company which threatens immediate cancellation of an employer's guaranty policy unless he discharges a certain employee is not acting within its rights, where the guaranty contract provides for its cancellation only upon notice.

CARTWRIGHT and WILKIN, JJ., dissenting.

*London Guarantee Co.* v. *Horn*, 101 Ill. App. 355, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

This is an action of trespass on the case by Gustave Horn, appellee, against the London Guarantee and Accident Company, appellant, commenced in the superior court of Cook county, where, upon a trial before a jury, Horn was awarded damages in the sum of $800, and judgment was entered by the court upon the verdict for that amount. Appellant appealed therefrom to the Appel-

late Court for the First District, where the judgment of the superior court was affirmed. The Appellate Court has granted a certificate of importance, and appellant brings the case to this court by appeal.

Appellee, on January 7, 1899, was in the employ of Arnold, Schwinn & Co., of Chicago, as foreman of the frame department of its bicycle factory, and on that date, while engaged in his work, was injured while attempting to operate a milling machine, from which he suffered the loss of two fingers on his right hand. At the time of this injury Arnold, Schwinn & Co. carried an indemnity policy in the London Guarantee and Accident Company, indemnifying said firm against loss from injuries to its employees to the extent of $5000 in case of injury to one person, and not exceeding $10,000 for injuries to two or more persons from the same accident. The policy provided that if any suit should be brought against the assured to enforce a claim for damages on account of an accident covered by the policy, immediate notice thereof should be given to the company, and the company would defend against such proceeding in the name and on behalf of the assured or settle the same at its own cost, unless it should elect to pay to the assured the indemnity above mentioned; that the assured should not settle any claim except at its own cost, nor incur any expense, nor interfere in any negotiation for settlement or in any legal proceeding without the consent of the company previously given in writing; that the assured, when requested by the company, should aid in securing information and evidence and in effecting settlements. The policy did not require the assured to discharge any employee at the request of appellant, but did provide that appellant could cancel the policy at any time upon giving five days' previous notice of its intention so to do. Appellee, after the injury, went to a hospital, and while there was visited by one Robinett, an agent of the guarantee company, and later by the same agent at the house

of appellee, at which place the agent requested appellee to call at the office of the company. Some time afterward appellee called at the office of the company and had a conversation with one Bloomingston, who was at the head of the claim department of the appellant company and also its attorney, at which time Bloomingston offered appellee $50 in settlement of his claim for damages on account of the injury, which appellee refused to accept. Later appellee returned with an attorney, and Bloomingston increased the offer to $75, and informed appellee that unless he accepted that amount appellant would see to it that he was not re-employed by Arnold, Schwinn & Co., and would also see that he did not get work anywhere else. The offer was refused, and appellee brought suit against Arnold, Schwinn & Co., in which a verdict was subsequently rendered for $3500, from which judgment an appeal was taken, which was pending at the time of the trial of this case. Pending that suit, and on June 26, 1899, Robinett, representing the guarantee company, called at the factory of Arnold, Schwinn & Co., where appellee had been re-employed, and in the presence of O'Connell, manager of the factory, offered appellee $100 in settlement of his claim, and told him that unless he accepted that amount he would have him discharged by Arnold, Schwinn & Co. Appellee refused the offer, and said he did not think that Mr. O'Connell would discharge him even if appellant so directed. Robinett then said to O'Connell, in the presence of appellee, that O'Connell would have to discharge Horn, as he refused to give appellant a release. O'Connell expressed the view that he did not have to discharge him, and after a reference to the contract of insurance said there was nothing in that which required him to discharge Horn if he refused to give a release. To this view Robinett assented, but said: "If you don't discharge him I will have to cancel this policy to-day. I am here to bring this case to a focus to-day, and if you refuse to

lay him off I will cancel it; that's my orders." O'Connell then said to Horn that he had lots of work for him and had expected that he would have a steady job all the year around, but that the insurance company would cancel the policy unless Horn was discharged, and he accordingly directed him to finish the work he was then engaged in and then quit, and accordingly Horn was discharged and paid off on the following day.

The Appellate Court finds that appellee's employment was not for any particular time, but Arnold, Schwinn & Co. did not desire to discharge him; that the firm had regular work for him, desired to retain his services as a foreman indefinitely, notwithstanding the suit pending against it, and discharged appellee solely because of appellant's demand and because of its threat to cancel its policy of insurance in case of a failure to comply with that demand.

Appellee brought this suit to recover damages against appellant upon the theory that the facts above set forth showed appellant had maliciously caused his discharge from his employment by the wrongful acts of its agents, and that such conduct constituted an actionable wrong, for which appellant was liable in damages to appellee.

F. J. CANTY, and J. A. BLOOMINGSTON, for appellant:

No cause of action arises for the doing of that which one has a legal right to do, even if in so doing one is actuated by malice. *Raycroft* v. *Tayntor*, 35 Atl. Rep. 53; *Iron Co.* v. *Uhler*, 75 Pa. 471; *Smith* v. *Johnson*, 76 id. 191; *Wilson* v. *Berg*, 88 id. 172; *Boysen* v. *Thorne*, 98 Cal. 578.

A bad motive cannot render unlawful an act otherwise lawful. *Allen* v. *Flood*, 67 L. J. (Q. B.) 119; *Perkins* v. *Pendleton*, 90 Me. 106; *Bohn* v. *Hollis*, 54 Minn. 223.

Threats are not actionable in themselves. *Vegelahn* v. *Gunter*, 44 N. E. Rep. 1081; *Heywood* v. *Tillson*, 75 Me. 225; 27 Am. Law Review, 47; *McCauley* v. *Tierney*, 33 Atl. Rep. 1.

Nominal damages only can be awarded in compensation where the contract is terminable at will. *Doremus*

v. *Hennessy*, 176 Ill. 619; *Lally* v. *Cantwell*, 40 Mo. App. 50; *Foreman* v. *Goldberg*, 62 N. Y. Supp. 752; *Chipley* v. *Atkinson*, 1 So. Rep. 934; *Dometory* v. *Schley*, 18 Ohio, 558; *Merrill* v. *Western Union*, 78 Me. 97.

Punitive damages are not recoverable unless there is malice in the act complained of. *Ously* v. *Hardin*, 23 Ill. 352.

CARL A. VOGEL, (DANIEL V. GALLERY, of counsel,) for appellee:

A malicious interference by a third person in a contract, whereby one of the parties to it suffers injury, is an actionable wrong. *Chipley* v. *Atkinson*, 23 Fla. 206; *Morgan* v. *Andrews*, 107 Mich. 33; *Luche* v. *Assembly*, 77 Md. 396; *Lally* v. *Cantwell*, 30 Mo. App. 524; 40 id. 44; *Curran* v. *Galen*, 152 N. Y. 33; *Connell* v. *Statker*, 45 N. Y. Supp. 1048; *Perkins* v. *Pendleton*, 90 Me. 166; *Plant* v. *Woods*, 176 Mass. 492; *Moran* v. *Dunphy*, 177 id. 485; *Doremus* v. *Hennessy*, 176 Ill. 608; *Angle* v. *Railroad Co.* 151 U. S. 1; *Railroad Co.* v. *Greenwood*, 2 Tex. Civil App. 76; *Danneberg* v. *Ashby*, 10 Ohio St. 558; *Raycroft* v. *Tayntor*, 68 Vt. 219.

In an action of tort for malicious injury it is for the jury to say whether malice has been shown, and whether vindictive damages shall be given, and what such damages shall be. *Chicago* v. *Martin*, 49 Ill. 241; *Doremus* v. *Hennessy*, 62 Ill. App. 391; *Railway Co.* v. *Rector*, 104 Ill. 296; *Ously* v. *Hardin*, 23 id. 352.

Mr. JUSTICE SCOTT delivered the opinion of the court:

As we understand the record in this case, appellee was in the employ of Arnold, Schwinn & Co., a corporation, under a contract terminable by either party at any time, but under which the employment would have continued for an indefinite period had appellant not caused Arnold, Schwinn & Co. to discharge appellee for the purpose of compelling appellee to surrender and release a cause of action which he claimed, and for the satisfaction of which, if it existed, appellant was liable up to the amount of $5000, and as a result of which discharge ap-

pellee was without employment for several considerable periods, and sustained financial loss and injury consequent upon such discharge.

Under these circumstances, does a cause of action exist in favor of appellee and against appellant? The result of this suit depends upon the answer to this question.

We have been favored with most elaborate and exhaustive briefs by counsel for both parties. The case principally relied upon by counsel for appellant is that of *Allen* v. *Flood*, 67 L. J. Q. B. 119, decided by the House of Lords in 1897. This case has excited a wide discussion, and was considered at length by this court in *Doremus* v. *Hennessy*, 176 Ill. 608. In this English case certain boiler-makers, members of a trade union, in common employment with the plaintiffs, who were shipwrights, members of a rival organization, working on wood, objected to working with the latter on the ground that in a previous employment they had been engaged on iron work, it being contrary to the regulations of the union to which the boiler-makers belonged for shipwrights to do work of that character. Allen, as a representative of the boiler-makers, saw the manager of their employer, to whom he stated that if the shipwrights, who were engaged from day to day, were not dismissed, the boiler-makers would leave their work or be called out by their union. The shipwrights were thereupon discharged and brought an action against Allen. Their right to recover was denied, principally upon the ground that every workman has a right to exercise his own option with regard to the persons in whose society he will agree or continue to work, and that when the employer was confronted with a situation where he would lose the services either of the boiler-makers or the shipwrights, he had the right to elect which class of workmen to discharge, and electing to discharge the shipwrights, both he and the boiler-makers were within their legal rights and no cause of action arose.

In *Mogul Steamship Co.* v. *McGregor*, 21 Q. B. D. 544, the plaintiffs and defendants were rival ship owners. The defendants offered certain inducements to secure the shipping of freight from those who might otherwise have patronized the plaintiffs. The right of action was denied, on the ground that the situation was the result of lawful competition between the parties.

*Huttly* v. *Simmons*, 67 Q. B. D. 213, is a case where the plaintiff was a cab-driver and the defendants were members of a cab-drivers' trade union. All parties to the suit were engaged in business in the same city. The defendants induced a cab proprietor to refuse to engage the plaintiff to drive a cab for him or to let a cab to the plaintiff to be driven by him. It will be observed that in this case the plaintiff in his employ would come in competition with the union to which the defendants belonged, and in holding that no cause of action existed it was said that none of the acts done or agreed to be done gave the plaintiff any right of action for injury, in law, to any legal right of his, following the case of *Allen* v. *Flood, supra.*

In *Quinn* v. *Leathem*, App. Cas. of 1901, p. 495, (decided by the House of Lords,) Lord Macnaghten, in speaking of *Allen* v. *Flood*, stated that its head-note might well have run in these words: "An act which does not amount to a legal injury cannot be actionable because it is done with a bad intent," and in this case last referred to it is said, that "it is a violation of legal right to interfere with contractual relations recognized by law, if there be no sufficient justification for the interference."

We are of opinion that the contention of appellant in the case at bar, to the effect that competition in trade, employment, or business is such a justification, is in accord with the authorities. This view finds support in the case of *Chambers* v. *Baldwin*, 15 S. W. Rep. 57, where it was held that a party to a contract for the sale of goods cannot maintain an action against one who maliciously, and with design to injure him and to benefit himself by

becoming a purchaser in his stead, advises and procures the other party to break the contract.

In *Raycroft* v. *Tayntor*, 68 Vt. 219, the superintendent of a stone quarry had given one Libersont leave to go upon the quarry and cut some of the poorer granite. Libersont employed the plaintiff to assist in this work. Defendant had a right to terminate Libersont's license at any time, and Libersont's employment of plaintiff could be terminated by either of the parties thereto at any time. The defendant had a personal difficulty with the plaintiff and thereupon induced Libersont to discharge him, threatening if Libersont did not do so, he (the defendant) would revoke the leave which Libersont had to take granite. The court holds that no right of action existed, putting the conclusion on the ground that the defendant had the undisputed right to determine who might remain and work upon the quarry, and that he could have revoked Libersont's license for the express purpose of removing the plaintiff, and that being true, he could also lawfully require Libersont to discharge the plaintiff or leave the quarry; but it is said that "the authorities cited for the plaintiff clearly establish that if the defendant, without having any lawful right, or by an act or threat *aliunde* the exercise of a lawful right, had broken up the contract relation existing between the plaintiff and Libersont, maliciously or unlawfully, although such relation could be terminated at the pleasure of either, and damage had thereby been occasioned, the party damaged could have maintained an action against the defendant therefor." The decision plainly proceeds upon the theory that the defendant had a right superior to the right of Libersont to determine who should be employed at the quarry in question.

In our judgment the cases cited by appellant, in so far as they lend support to its theory, will be found to be cases where the party who secured the discharge of the employee was in some way in competition with that

employee in the business or work in which the employee
was then engaged, or was a member of some organization
which was in competition with the employee or some
organization to which that employee belonged, and the
fact that such competition existed has been treated by
some of the courts as justification for the act of the de-
fendant in bringing about the discharge. In fact, appel-
lant seems to take this view, for it devotes a considerable
portion of its argument to an attempt to show that plain-
tiff and defendant were in competition with each other,
in that appellant desired to secure or satisfy the alleged
right of action of appellee for the least possible sum,
while appellee desired to secure for that right of action
the greatest possible sum. Counsel seem to have been
impelled to this view of the matter by the dissenting
opinion of Mr. Justice Holmes in *Vegelahn* v. *Gunter*, 167
Mass. 92, where, in discussing the proposition that one
man may set up a business in competition with another
with the intention and expectation of ruining another
already engaged in that business in that locality, and if
he succeed in his intent is not held to act unlawfully
and without justifiable cause, Justice Holmes used this
language: "If the policy on which our law is founded is
too narrowly expressed in the term 'free competition,'
we may substitute 'free struggle for life.' Certainly the
policy [that of permitting free competition] is not lim-
ited to struggles between persons of the same class com-
peting for the same end. It applies to all conflicts of
temporal interests." While it is true that the temporal
interests of Horn and appellant were involved in the
negotiations between them, we believe that the authori-
ties which look upon competition as a justification for
the act of one party in securing the discharge of an em-
ployee have regarded the term in a more restricted sense,
and given to the term "competition" its ordinary mean-
ing and signification. This conclusion is certainly war-
ranted by the reasoning in *Doremus* v. *Hennessy, supra,*

where this court discusses competition as a defense to an action of this character. It cannot be held that appellee and appellant were, in any ordinary sense of the term, in competition with each other. It is also to be observed that the injury which it was sought to visit upon Horn was not primarily to subject him to a deprivation of his employment, but was to compel him to surrender a right not connected with his employment. If the only object of appellant had been to secure appellee's discharge for the purpose of obtaining his position for another, or for the reason that the employment of appellee by Arnold, Schwinn & Co. in some way conflicted with the right of appellant, or some organization to which it belonged, to obtain the same or similar employment, a very different question, and one not now before this court, would be presented, and *Allen* v. *Flood, supra,* and other cases of that character cited by appellant, would then be worthy of greater consideration.

It is further contended on the part of the appellant, that while the evidence may have shown that it was animated by malice, in the ordinary acceptation of the term, toward Horn, the proof fails to show any legal malice. In this connection it is argued that appellant had the right to have Horn discharged under the terms of the contract, or if it did not have that right, that it seriously and in good faith believed that it had, and that it is thereby relieved of any imputation of malice. There is no provision in the policy which by the wildest stretch of the imagination could be held to give any such right to appellant, and its conduct in attempting to secure a settlement of this claim shows it to have been animated by a wanton disregard of the rights of appellee. He was first told by the attorney of appellant that unless he settled for a trifling amount appellant would have him discharged by Arnold, Schwinn & Co.,—a threat to do that which this attorney must have known his client had no right to do. Afterward Robinett, the agent for the

company, made the same threat, and upon his atten-
tion being called to the fact that the policy gave him no
power to require Horn's discharge, he said to Arnold,
Schwinn & Co.: "If you don't discharge him I will have
to cancel this policy to-day. I am here to bring this case
to a focus to-day, and if you refuse to lay him off I will
cancel it." When Mr. Robinett made this threat, which
resulted in appellee's discharge, he was making a threat
to do an unlawful thing,—to do a thing which appellant,
by the terms of the contract, had no right to do. The
contract provided only for its cancellation upon five
days' notice. It is not pretended that any such notice
had been given, but Robinett secured Horn's discharge
by threatening to cancel the contract "to-day." We think
it perfectly apparent that the attorney for appellant,
and its agent, Robinett, each sought to bring about,
and finally did bring about, the discharge of appellee by
threatening to do acts which each, respectively, knew
he had no right to do.

Malice, in its legal sense, means a wrongful act done
intentionally, without just cause or excuse; the willful
violation of a known right. (19 Am. & Eng. Ency. of Law,
—2d ed.—p. 623.) Were the acts of appellant wrongful?

In *Moran* v. *Dunphy*, 177 Mass. 485, it is said: "We
apprehend that there no longer is any difficulty in rec-
ognizing that a right to be protected from malicious
interference may be incident to a right arising out of a
contract, although a contract, so far as performance is
concerned, imposes a duty only on the promisor. Again,
in the case of a contract of employment, even when the
employment is at will, the fact that the employer is free
from liability for discharging the plaintiff does not carry
with it immunity to the defendant, who has controlled
the employer's action to the plaintiff's harm."

In *Hollenbeck* v. *Ristine*, 114 Iowa, 358, it is stated that
the contention of appellant "is bottomed on the thought
that he did not act unlawfully in inducing Mr. Hall to

discharge the plaintiff, and therefore no action will lie." This position is said to be incorrect, and it is held to be unlawful to induce another to discharge an employee without just cause.

In *Quinn* v. *Leathem, supra,* it was said: "It is a violation of legal right to interfere with contractual relations recognized by law if there be no sufficient justification for the interference."

This gives rise to the question, what is sufficient justification?

As we have already seen, the ends of competition have been deemed sufficient. No doubt the fact that the employee was inefficient, untrustworthy, dishonest or dissolute would be deemed a legal justification, but certainly a desire to compel the employee to surrender a cause of action wholly disconnected with the continuance of his employment does not afford justification for interference by a third party, who desires the satisfaction of the alleged liability.

"If the persuasion be used for the indirect purpose of injuring the plaintiff or of benefiting the defendant at the expense of the plaintiff, it is a malicious act, which is in law and in fact a wrong act, and therefore a wrongful act, and therefore an actionable act if injury ensues from it." *Bowen* v. *Hall*, 6 Q. B. D. 333.

The right to maintain an action can be sustained upon the doctrine that a man who induces one of two parties to a contract to break it, intending thereby to injure the other or to obtain a benefit for himself, does the other an actionable wrong. *Gore* v. *Condon*, 40 L. R. A. 382.

It follows, therefore, that the act of the defendant complained of was wrongful, and, in the legal sense of the term, malicious.

Arnold, Schwinn & Co. had the undoubted right to discharge Horn whenever it desired. It could discharge him for reasons the most whimsical or malicious, or for no reason at all, and no cause of action in his favor would

be thereby created; but it by no means follows that while the relations between Arnold, Schwinn & Co. and Horn were pleasant, and while, as the evidence shows, it was the expectation of the company that Horn would continue in its employ "all the year around," that the interference of appellant, whereby it secured the employer to exercise a right which was given it by the law, but which, except for the action of appellant, it would not have exercised, is not actionable.

In *Perkins* v. *Pendleton*, 90 Me. 166, the conclusion of the court is, "that wherever a person, by means of fraud or intimidation, procures either the breach of a contract or the discharge of a plaintiff from an employment, which, but for such wrongful·interference, would have continued, he is liable in damages for such injuries as naturally result therefrom; and that the rule is the same whether by these wrongful means a contract of employment definite as to time is broken, or an employer is induced, solely by reason of such procurement, to discharge an employee whom he would otherwise have retained."

In *Chipley* v. *Atkinson*, 23 Fla. 206, it is said: "From the authorities referred to in the last preceding paragraph, and upon principle, it is apparent that neither the fact that the term of service interrupted is not for a fixed period, nor the fact that there is not a right of action against the person who is induced or influenced to terminate the service or to refuse to perform his agreement, is of itself a bar to an action against the third person maliciously and wantonly procuring the termination of or a refusal to perform the agreement. It is the legal right of the party to such agreement to terminate it or refuse to perform it, and in doing so he violates no right of the other party to it, but so long as the former is willing and ready to perform, it is not the legal right, but is a wrong on the part of a third party to maliciously and wantonly procure the former to terminate or refuse to perform it."

This question has frequently been before courts of last resort in this country. The view taken in the two cases last cited finds support in the following authorities: *Moran* v. *Dunphy, supra; Curran* v. *Galen,* 152 N. Y. 33; *Raycroft* v. *Tayntor, supra; Lucke* v. *Clothing Cutters,* 77 Md. 396; *Hollenbeck* v. *Ristine, supra;* and also in *Blumenthal* v. *Shaw,* 77 Fed. Rep. 954, decided by the Third Circuit Court of Appeals.

In our own State, the case of *Doremus* v. *Hennessy* is first reported in 62 Ill. App. 391. Plaintiff there kept a laundry office, where she received clothing which her patrons desired to have laundered. She would then procure persons operating laundries to do the work and return the garments to her for delivery to her customers. The defendants were members of the Chicago Laundrymen's Association. She charged, by her declaration, that the defendants, by false representations and by threats and intimidation, induced certain parties who had been doing the work for her to break their contracts and engagements with her. The Appellate Court, after stating that it is now well established that in civil actions the conspiracy is not the *gravamen* of the charge but may be pleaded and proved in aggravation of the wrong, declares the law to be, that an action may be maintained for the malicious interference with the business of another, his occupation, profession or way of obtaining a livelihood, and affirmed a judgment of $6000 in favor of the plaintiff. The case came to this court, where it is reported in 176 Ill. 608. The judgment of the Appellate Court was affirmed, and it appears from the statement of facts made by this court that with some of the persons who did work for her the arrangement was that they would do her work as long as the laundry association did not interfere, and that these persons, among others with whom she had contracts for specific periods, were induced by threats made by the laundry association to cease connection in business with appellee. Appellants contended that their

acts were not mere malicious acts, done solely with the intent to injure plaintiff's business, but were in the line of legitimate competition. It was there said by this court (p. 614): "No persons, individually or by combination, have the right to directly or indirectly interfere or disturb another in his lawful business or occupation, or to threaten to do so, for the sake of compelling him to do some act which, in his judgment, his own interest does not require. Losses willfully caused by another, from motives of malice, to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill and credit, will sustain an action. It is clear that it is unlawful and actionable for one man, from unlawful motives, to interfere with another's trade by fraud or misrepresentation, or by molesting his customers or those who would be customers, or by preventing others from working for him or causing them to leave his employ by fraud or misrepresentation or physical or moral intimidation or persuasion, with an intent to inflict an injury which causes loss." It is true that in the additional opinion delivered upon the petition for rehearing Mr. Justice PHILLIPS distinguishes the case of *Allen* v. *Flood*, by pointing out the fact that in the latter case there was no contract the breach of which was induced by the defendant, while in the *Doremus case* contracts existed in which the plaintiff had a property right and which were broken as a result of the actions of the defendants; but, as we have already seen, the clear weight of authority is to the effect that where the contract is one of employment, it is immaterial whether it is for a fixed period or is one which is terminable by either party at will, both parties being willing and desiring to continue the employment under that contract for an indefinite period.

We therefore conclude, both upon reason and authority, that where a third party induces an employer to discharge his employee who is working under a contract

terminable at will, but under which the employment would have continued indefinitely, in accordance with the desire of the employer, except for such interference, and where the, only motive moving the third party is a desire to injure the employee and to benefit himself at the expense of the employee by compelling the latter to surrender an alleged·cause of·action, for the satisfaction of which, in whole or in part, such third party is liable, and where such right of action does not depend upon and is not connected with the continuance of such employment, a cause of action arises in favor of the employee against the third party.

Appellee asked no instruction on the trial in the superior court. In addition to the instructions given at the request of appellant the court gave one instruction of its own motion. In this instruction the word "plaintiff" was in one instance inadvertently used instead of the word "defendant," but we do not think the jury could have been misled thereby.

Other objections are made in reference to the action of the court in passing upon instructions and the admission of evidence. We have carefully considered these, and are of the. opinion that the appellant sustained no wrong of which it can complain here.

It is urged that the verdict is excessive in amount. We have frequently held that this question is conclusively determined by the judgment of the Appellate Court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

WILKIN and CARTWRIGHT, JJ., dissenting:

By the express terms of the policy issued by appellant to Arnold, Schwinn & Co., insuring that company against liability for personal injuries to its employees, appellant had the absolute legal right to terminate the insurance at five days' notice, in which case the unearned premium was to be re-paid. That right was unconditional and could be exercised by the appellant at its will, with

or without a reason, or from any motive which might prompt it to such action. The cause, and only cause, of the discharge of appellee was the threat of appellant's agent, Robinett, to exercise the right reserved in the policy and cancel it unless the appellee should be discharged. We see no justification for saying that the threat was to cancel the policy in any different way from that provided in it. Having an absolute legal right to cancel the policy at its own election, the threat of appellant to do it was not a threat to do a legal wrong. If there was a legal right to cancel the policy it was not unlawful to declare an intention to do so, and if the right was not affected by the reasons influencing appellant's action, the motive was immaterial. The motive which actuated Robinett in threatening to exercise the legal right of appellant secured to it by its contract, and terminate the insurance, was to force a settlement of the suit and to prevent the insured from furnishing appellee with lucrative employment while carrying on the suit, which was, in effect, against appellant. If there was any legal liability for appellee's injuries the liability was upon appellant to the extent of $5000, and it was bound by the policy to defend the suit or settle it at its own cost. There was no evidence tending to prove that the officers or agents of appellant did not honestly believe that there was no legal liability for such injuries. So far as appeared, the position of appellant that appellee had no legal claim against it or Arnold, Schwinn & Co. was assumed in entire good faith and on sufficient grounds. Appellee was a foreman in the shop where accidental injuries were insured against, but whether that would be a justifiable reason for declining to continue the insurance while he was prosecuting a suit which in fact was against appellant, or whether the motive of appellant was a proper one according to moral standards, we regard as immaterial. That appellant had a legal right to cancel the policy if its motive had not been bad is not

denied, and the threat to do it did not become unlawful because of a bad motive. On that subject Mr. Justice Cooley says: "Bad motive, by itself, then, is no tort. Malicious motives make a bad act worse, but they can not make that a wrong which in its own essence is lawful." He illustrates the rule by the case of *Mahan* v. *Brown*, 13 Wend. 261, and then says: "So it has been held that no action would lie for maliciously conspiring, as, insurance officers to refuse insurance on the plaintiff's property; or for maliciously collecting the notes of a bank and presenting them for redemption; or for maliciously adopting a trade-mark to the prejudice of a plaintiff who has no exclusive right to appropriate it; or for throwing open one's land to the public so that they may pass over it, thereby avoiding a toll gate; or for maliciously throwing down fences put up through one's land to mark the lines of a road which has never lawfully been laid out." (Cooley on Torts, 690.) One may sue his debtor from no motive but ill-will, and yet if there is a legal cause of action there could be no liability for bringing the suit. It will be manifest from these examples that immunity from liability for the exercise of a legal right does not rest alone upon the right of competition in trade, but is founded upon the truism "that the exercise by one man of his legal right cannot be a legal wrong to another." (Cooley on Torts, 688.) To justify a recovery there must be legal wrong as well as damage.

This case is, in our judgment, not different in principle from cases where one, in the exercise of a legal right, refuses to continue in the employment of another unless some other employee shall be discharged. It is not claimed that such an act would give rise to a cause of action. It certainly makes no difference whether the motive is to injure the employee who is discharged, or to obtain a benefit to the one causing the discharge. It was held in *Raycroft* v. *Tayntor*, 68 Vt. 219, that "if one, in the exercise of a lawful right, threatens to terminate

a contract between himself and another unless the latter discharges his employee not engaged for any definite time, the discharged employee has no right of action for damages against the party making the threat, although his motive in procuring the discharge may have been inspired by malice." In that case the defendant was the manager and superintendent of a granite quarry. One Libersont obtained from him leave to go into the quarry and cut the poorer granite into paving stones by paying an agreed price therefor. The contract was for no definite time. He expected to continue the work through the winter. The plaintiff was employed by the latter in the work of cutting the paving stones. While so employed a disagreement arose between him and the defendant about matters having no connection with the quarry or his employment by Libersont. The defendant becoming angry, ordered the plaintiff to leave the premises and threatened to have him discharged. He afterwards went to Libersont and told him that if he did not discharge the plaintiff he could no longer cut paving blocks on the premises. Libersont informed him of his arrangement with the plaintiff; that he was satisfactory to him and he did not want to discharge him, but the defendant insisted that he must be discharged or that Libersont should leave the works, and thereupon the latter did discharge him solely because of that demand. The plaintiff showed that he suffered loss by reason of such discharge and recovered a judgment in the trial court, but the Supreme Court reversed it on the ground that the defendant's demand for the plaintiff's discharge was but a threat to exercise a legal right,—that is, the right to terminate his agreement with Libersont whenever he chose to do so. That decision seems to be supported by the authorities referred to in the opinion, and none are cited or to be found to the contrary.

In *Perkins* v. *Pendleton*, 90 Me. 258, (decided in 1897,) the *Vermont case, supra,* was cited for that part of the opin-

ion which says: "The authorities cited for the plaintiff clearly established that if the defendant, without having any lawful right, or by an act or threat *aliunde* the exercise of a lawful right, had broken up the contract relations between the plaintiff and Libersont maliciously and unlawfully, although such relations could be terminated at the pleasure of either, and the damage had thereby been occasioned, the party damaged could have maintained an action against the defendant therefor." But it is also said: "We think that the important question in a case of this kind is as to the nature of the defendant's act and the means adopted by him to accomplish his purpose. Merely to induce another to leave an employment or to discharge an employee by pursuasion or argument, however whimsical, unreasonable or absurd, is not, in and of itself, unlawful, and we do not decide that such interference may become unlawful by reason of the defendant's malicious motives, but simply that to intimidate by threats, if the threats are of such a character as to produce this result, and thereby cause him to discharge an employee whom he desires to retain and would have retained except for such unlawful threats, is an actionable wrong. Nor do we differ from the recent decision of the Vermont court in the case above referred to, which holds that a threat to do what the defendant had a right to do would not be such a one as to make the defendant liable in an action of this kind."

We think the conclusion must be that the evidence produced upon the trial, with all its legal intendments, not only failed to fairly tend to prove that the plaintiff's discharge was accomplished by the illegal acts of the defendant, but that it affirmatively showed that it was accomplished by threatening to do that which it had the lawful right to do, and therefore the trial court erred in refusing to give the peremptory instruction asked to return a verdict of not guilty.