Nicholas Hoffman et al., Appellants, v. Chicago Laundry Owners' Association et al., Appellees.

Gen. No. 40,130.

Heard in the third division of this court for the first district at the June term, 1938. Opinion filed November 30, 1938.

JOHN LIGTENBERG and CAMERON LATTER, both of Chicago, for appellants.

JACOBSON, MERRICK, NIERMAN & SILBERT, of Chicago, for appellees; LEWIS F. JACOBSON and DAVID SILBERT, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiffs from the order of dismissal of plaintiffs' bill of complaint entered by the court upon the motion of the defendants, Chicago Laundry Owners' Association and others, to strike and dismiss the bill.

On December 22, 1937, the plaintiffs filed a bill of complaint against the Chicago Laundry Owners' Association, a voluntary organization, its president and secretary, and against two labor unions, and their presidents and secretaries, who were made parties to the litigation, wherein the plaintiffs prayed that an injunction issue restraining the defendants from interfering with the relation of employer and employee existing between the plaintiffs and the Monarch Laundry Company by imposing penalties on the Monarch Laundry Company by calling strikes or boycotts, or by any other form of coercion, and it was to this bill of complaint that the defendants filed a motion to strike. At the same time, on motion of plaintiffs the action was dismissed as to the International Brotherhood of Teamsters, Chauffeurs and Stablemen, Local No. 712, and Joseph Busch and George Bendel, president and secretary of said Local 712.

The questions involved in the litigation were decided by the trial court upon the sole issue of sufficiency of the complaint, and, under the rule that a motion to strike and dismiss a complaint is an admission that facts well pleaded in the complaint are admitted, the plaintiffs submit that the pleadings, charge the following:

That the plaintiffs are laundry workers employed by verbal contracts of employment, terminable at the will of the parties thereto; that both the plaintiffs and their employer are satisfied and wish to keep the contract of employment in force; that labor conditions under these contracts of employment are more favorable to the plaintiffs than are the terms and conditions of em-

ployment elsewhere in the industry; that there is no strike or lockout, except that threatened by the acts of the defendants, existing at the plant of plaintiffs' employer; that the defendant, Chicago Laundry Owners' Association is a group of laundry owners in the vicinity of Chicago; that the ostensible objects of defendant, Chicago Laundry Owners' Association, are the stabilizing of prices and labor relations in the industry; that defendant union is a labor union of inside laundry workers; that the purposes of defendant, Laundry Owners' Association, are to enforce excessive prices and to prevent competition, accomplished by means of fines and penalties levied on its members who break its rules; that in order to be more effectual in enforcing its regulation of the industry, defendant association has made a bargain with defendant unions, whereby the association agrees to maintain the "closed shop" and the "check-off" system in the industry in exchange for the calling of strikes when needed to enforce its "regulation" of the industry; that the plaintiffs are and always have been strangers to the defendant, Laundry Owners' Association, and are not and never have been members of either of the defendant unions; that the plaintiffs' religious principles forbid their membership in the defendant union; that the union to which the plaintiffs belong is ready and willing to deal with the Monarch Laundry Company collectively regarding labor matters; that on October 15, 1937, the Monarch Laundry, plaintiffs' employer, entered into a contract with the defendant, Local 46 (Union), providing for the discharge of the plaintiffs from the Monarch's employ unless plaintiffs join the defendant union by December 31, 1937; that the contract was drawn by the officials of the union and the association and that the Monarch Company was required to enter into it as a condition of remaining in good standing as a member of the association.

And the plaintiffs state that unless enjoined as prayed for in the complaint, or unless the Monarch Company discharges the plaintiffs from its employ by December 31, 1937, if they do not sooner join the defendant union, the defendant, Laundry Owners' Association, will compel the Monarch to discharge plaintiffs by:

(a)  Imposing ruinous penalties on it.

(b)  Suspending or expelling Monarch from membership in the association and causing its customers to boycott it.

(c)  In conspiracy with defendant unions, by calling strikes of the members of the unions employed by Monarch.

(d)  Preventing plaintiffs from getting employment in other laundries in Chicago by threatening similar action against such laundries which are members of said association.

It is further stated in their complaint that the defendant association through its officials and those of the defendant union, shortly after the date of the contract, directed the Monarch to see to it that plaintiffs join defendant union—that Monarch would gladly deal with the plaintiffs' union were it not for the threats of the defendants; that the defendants (association and union) have ordered the Monarch to discharge the plaintiffs and breach its employment contracts with them; that the defendants have threatened to call strikes of the members of the defendant unions, employed by Monarch, unless the plaintiffs are discharged by the Monarch; that the defendants will, unless restrained as prayed for, continue to threaten and will eventually call such strike to enforce the breach of plaintiffs' employment contracts with the Monarch.

It is further stated by the plaintiffs in their complaint that certain of the defendants are insolvent; that the injury threatened the plaintiffs is irreparable, in

that a long period of enforced idleness will deprive them of skill in their trade to a degree incapable of ascertainment and compensation at law.

The plaintiffs contend that a cause of action arises to the plaintiffs by reason of the matters stated in the complaint, and the charge made by the plaintiffs against the defendants is, that the latter, acting in concert and combination, threaten to, and will, unless restrained by the injunction sought in this proceeding, maliciously bring about the breach of a valid, subsisting contract of employment between the plaintiffs and their employer, the Monarch Laundry Company; and that dealing with the common law aspect of the question, upon an action for damages predicated upon acts done by a third party causing, maliciously, the breach of a contract of employment, terminable at the will of the contracting parties, the Supreme Court has answered this question in the affirmative, in the leading case of *London Guaranty Co. v. Horn,* 206 Ill. 493, wherein a judgment in tort against a party who, to coerce an employee into accepting an inadequate settlement for damages for injuries sustained in the course of his employment, brought about the termination of the employee's contract of employment, was sustained. The court in that case—cited by the plaintiffs—followed the reasoning of the opinion in the earlier case of *Doremus v. Hennessy,* 176 Ill. 608, and affirmed its holding therein to the effect that: "No persons, individually or by combination, have the right to directly or indirectly interfere or disturb another in his lawful business or occupation, or to threaten to do so, for the sake of compelling him to do some act which, in his judgment, his own interest does not require."

The defendant's answer to the contention of the plaintiffs is that the complaint, after setting forth pages of irrelevant and scandalous allegations, in all probability the result of wishful thinking on the part

of the plaintiffs, sets forth unsupported conclusions of an alleged conspiracy against them, alleged malicious acts purporting to interfere with alleged rights of the plaintiffs and alleged monopolistic practices; that only value of such unsupported conclusions is seemingly an attempt to incite a sympathetic ear of the court. Following this mass of surplusage we ultimately find the plaintiffs stating in their brief the substance of their complaint; and the defendant quotes from plaintiffs' statement as follows:

"It ought to be remembered, however, that primarily, plaintiffs are not complaining directly of this contract. They base their claim for relief upon the unlawful means about to be used by the defendants, acting in combination, to compel them, against their consciences and their desires, to join the contracting Union.

"Strictly speaking, in view of the state of this record, it is not necessary to a decision of this case, to determine whether the contract entered into between plaintiffs' employer and the defendant union, is in violation of the public policy of this state or not." And then the defendant association states in its brief that it has no quarrel with the rule of law that malicious acts by third persons which interfere with the property rights of others are cognizable in a court of law. The real issues in this case at bar are: what acts come within this rule of law; does the bill allege any ultimate facts which, as a matter of law, are malicious acts and do the plaintiffs employed under a contract terminable at will, have a property right that equity will protect in the event their employer subsequently executes a "closed shop" agreement with a labor union to which such employees do not belong.

From the expressions used by the parties to this litigation it is evident that the plaintiffs may terminate this contract which was made terminable at will,

and there is no feature of this case which would prevent the Monarch Laundry Company from entering into and executing a "closed shop" agreement with the labor unions to which such employees did not belong, and it seems from the allegations contained in the bill that this laundry company did enter into a contract with the defendant union, providing for a "closed shop." It is true that there is an allegation that they entered into this agreement with the union providing for the discharge of the plaintiffs from the Monarch's employ unless the plaintiffs joined the union by December 31, 1937, and this right to discharge at will is admitted by the plaintiffs in their bill when they state they are employed by verbal contracts of employment, terminable at the will of the parties thereto, meaning, of course, the plaintiffs as well as the Monarch Laundry Company.

It is to be noted that the Monarch Laundry Company is not a party to this lawsuit and at this time is not complaining of the acts charged by the plaintiffs. As previously stated, this company could have joined with the defendants for the purposes outlined in the bill of complaint. The only statement by the plaintiffs is that they were advised that they would be obliged to join the union by December 31, 1937, which would give the plaintiffs time within which to determine whether they desired to join the union or not.

In this connection it might be well to note that the attorney for the Chicago Laundry Owners' Association stated in open court, when the cause was being heard on oral argument, that three of the plaintiffs had joined the union and one had left the employ of the Monarch Laundry Company, and in considering the litigation from the angle presented to us by the plaintiffs it is largely a moot question in so far as it concerns the facts as charged against the defendant Laun-

dry Workers' International Union, Local No. 46, and its officers. This is apparent from the fact that the union did not join in the appeal before this court.

In the case of *Carpenters' Union v. Citizens Committee to Enforce Landis Award*, 333 Ill. 225, the court held that while lawful competition which may injure, or even destroy, a person's business is not actionable and may be a sufficient justification, in law, for procuring the discharge of another from employment, the justification of lawful competition does not apply to the efforts of strangers to a controversy between employers and employees to compel the action of either or to injure either for the purpose of compelling him to yield to the other the absolute right to manage his own business in his own way. It further held that every person has a legal right to full freedom of contract in the prosecution of a lawful business and in the disposal of his labor, no person or combination of persons has the right, directly or indirectly, to interfere with another in his lawful business and compel him to do some act which in his own judgment he does not approve, and losses caused by willful interference, without legal cause, with the relation of employer and employee or with their freedom of contract are actionable at law, and in a proper case an injunction may be obtained to restrain the wrongful interference.

Therefore the question in the instant case is whether the bill of complaint charges that the Chicago Laundry Owners' Association committed acts such as would interfere with the performance of plaintiffs' duties to the Monarch Laundry Company.

The charge made is that the plaintiffs never had any contractual or other relationship with the Chicago Laundry Owners' Association and are not and never have been members of the defendant union, though they believe in and indorse the principles of "collective bargaining," and then, that the plaintiffs are

members of a religious organization which prohibits its members from joining or adhering to any secular organization which does not in its fundamental law or constitution recognize affirmatively the existence and omnipotence of Almighty God as the sovereign ruler of all affairs.

There seems to be no charge in the bill as presented to the court which would indicate that an effort was made to interfere with the rights of the plaintiffs to continue their employment with the Monarch Laundry Company, other than that threats were being made to force the Monarch Laundry Company to breach its contract with the plaintiffs and discharge them unless they joined the union by December 31, 1937, and that upon failure to act before December 31, 1937, a strike would be called; that because of these threats the Monarch Laundry Company informed the plaintiffs it would be compelled to discharge them unless they joined the union.

In *Carpenters' Union v. Citizens Committee to Enforce Landis Award,* 333 Ill. 225, the court makes this observation: "A lawful purpose and a good motive do not, however, justify unlawful action in accomplishing the purpose. Any person had the right to advocate the reasonableness, propriety and justice of the Landis award or the contrary and to use whatever influence he possessed to secure or to defeat its observance, provided that in so doing he did not unlawfully interfere with the legal right of another. He could lawfully advise acceptance or rejection of the award, express and maintain his views by discussion, by writing and speaking, and by persuasion seek to have the award accepted and acted upon, or rejected, by contractors, by workmen, by the owners of buildings or by person contemplating building. If he were a contractor he could employ workmen only under the terms of the award and refuse to employ others.

or he could refuse to employ workmen under its terms and employ others without regard to those terms, or if he were a workman he could refuse to agree to work under the terms of the award or otherwise than under its terms.''

This quotation is particularly applicable to the facts here, and, as previously stated, as there is no act alleged in the bill of complaint which would justify the issuance of an injunction, we are of the opinion that the court was justified in dismissing the bill upon the motion of the defendants.

For the reasons stated in this opinion the order of the court is affirmed.

*Order affirmed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.