JAMES HOLLENBECK v. J. M. RISTINE, Appellant.

**Libel:** PRIVILEGE. One of the surgeons of a street railway company rendered professional services to a conductor, who refused payment of part of the bill. The surgeon thereupon reported the matter to the president of the company, who requested defendant, the surgeon's partner, to put the matter in writing, which defendant did, stating that the conductor was cowardly, slinking behind the defense of limitations. *Held,* that, though written in response to the president's request, the communication was not privileged.

PROXIMATE DAMAGES: *Loss of employment.* One of the surgeons of a street railway company rendered professional services to

a conductor, who resisted payment of part of the bill. The surgeon reported the matter to the president of the company, who requested defendant, his partner, to put the matter in writing, which he did, stating that the conductor was slinking behind the defense of limitations, and they preferred not to be connected with a company employing such men. The president thereupon ordered the conductor's discharge, giving as his reason that otherwise the surgeon would withdraw, but, the claim being paid, the conductor was retained for a time in the president's absence. The latter, on his return, however, ordered his immediate dismissal. *Held*, in an action for libel that the communication was the cause of the conductor's discharge.

*Same.* One person cannot advise another to discharge an employe, accompanying his advice with libelous charges, and escape liability therefor.

*Appeal from Linn District Court.*—HON. H. M. REMLEY, Judge.

WEDNESDAY, MAY 29, 1901.

ACTION at law to recover damages for an alleged libel written of and concerning the plaintiff, resulting in his discharge from employment by the Cedar Rapids & Marion City Railroad as conductor, and for loss of time and injury to reputation and means of support. Defendant admitted the writing of the alleged libel, and averred that it was both justified and privileged. Verdict and judgment for $683.33 was rendered in favor of the plaintiff. Defendant appeals.—*Affirmed.*

*C. D. Harrison* and *Hubbard, Dawley & Wheeler,* for appellant.

*Henry Rickel, John Christie,* and *Jamison & Smyth* for appellee.

GIVEN, C. J.—I. At and for a long time prior to December 11, 1892, the plaintiff was in the employ of said

railway company as a conductor, of which company P. E. Hall was president, F. L. Diserens, superintendent, and the defendant and his father, Dr. Henry Ristine, partners in the practice of medicine, were the surgeons. In October and November, 1886, Dr. Henry Ristine made two professional visits, in consultation with Dr. La Grange, upon the plaintiff's wife and son, for which services said firm charged the plaintiff $15. In 1887 two or more notices were sent to the plaintiff, requesting him to pay the bill, but he made no reply thereto. In the fall of 1892 the account was placed in the hands of an attorney, and suit brought thereon, whereupon the plaintiff employed an attorney, but whether to defend or to compromise is in dispute. The original notice in the case was not served in time and the case was dismissed without prejudice. In an interview between the attorneys, plaintiff's attorney called attention to the fact that the claim was barred, and this mention was communicated to the defendant before he wrote the letter under consideration. It does not appear whether the plaintiff authorized a defense based upon the statute of limitations. He was disputing the claim on the ground that one visit charged for was not professional, but a social visit. The fact seems to be that Dr. Ristine visited the family three times, one of which was a social call, and for which no charge was made. The efforts at a compromise ended in plaintiff's attorney offering $7.50, which defendant refused to accept. Just prior to the writing of the letter, defendant had an interview with Mr. Hall, of which defendant stated as follows: "Mr. Hall came into my office, and said that he had learned from my father at a time that he had made a call on him a little while before that we had a bill against Mr. Hollenbeck for professional services rendered, and which he had refused to pay. He said that he noticed that father was not very well, and suggested to him that he would ask me more about it. Then he asked me what there was about it, and I went on and gave him tersely the

facts in the case. I said that Hollenback had not paid our bill for a little more than five years; that we had finally attempted to collect it; and that he had, when he first agreed to pay me $10, then rescinded that, and desired to pay $7.50 after litigation was started, or, rather, after I had given it to a collector; that I had declined to take the $7.50, being 50 per cent. of the original bill. I also told him that I understood from my attorney that Mr. Hollenbeck was pleading the statute of limitations. 'Well,' he says, 'I wish you would just put that matter in writing, and send it to me, so that I will have it before me,' or something to that effect; and I said to Mr. Hall that I would do so at my convenience; that I couldn't do it that day, as I was busy; and he said, 'Oh, well, any time you get around to it; there is no hurry about it.' That was about all the conversation I had with Mr. Hall about it, and subsequent to that I wrote the letter." The writing is as follows: "Cedar Rapids, Iowa, Dec. 7, 1892. P. E. Hall, Esq., Pres. C. R. & M. R'y. Co., Cedar Rapids, Iowa—Dear Sir: For some five years past one of your old and trusted conductors, Mr. James Hollenbeck, has owed us a bill for professional services rendered his family in the way of consultation with his family physician at his home in Marion. His attention has been repeatedly called to the subject, but to no purpose. We finally sued him, to which he responds by employing an attorney and contesting the claim. Having no other defense, he cowardly slinks behind that of statutory limitation. Such a course is not exactly in accordance with our idea of strict integrity. So far as we are concerned, we would prefer not to be connected in an official capacity with a corporation giving employment to men of this character, especially when permitted to occupy positions of trust. Yours, courteously, H. & J. M. Ristine." On the next day Mr. Hall wrote as follows: "Cedar Rapids, Iowa, Dec. 8, 1892. Mr. F. L. Discrens, Supt., City—Dear Sir: The inclosed letter from Drs. H. & J. M. Ristine is referred to you for action there-

on. As you know, it is not our policy to become the means of collecting debts of our employes. At the same time, we do not intend to keep in our employ men who do not pay their honest debts with reasonable promptness. This case, however, presents an entirely different phase. These gentlemen are the official physicians of the company. Their standing is such that in the matter of proper care of our employes or persons injured on our lines, and the evidence they can give in cases that may be litigated are of such importance, that we cannot afford to dispense with their services, and, when it comes to a question of whether they shall quit us or Mr. Hollenbeck leaves, there seems to be no doubt but what we had better let him go. He being one of the oldest employes of the old concern, I do not want to be harsh with him, but at the same time see no other thing for you to do, except for you to let him find some other business, and tender his resignation to us. If it should be seriously inconvenient for him to leave without a month's time to get other employment, I should give it to him. Very truly yours, P. E. Hall, President." Defendant testifies that three days after the letter was written plaintiff called, and paid the $15, and asked defendant to see Mr. Hall, and tell him that he had arranged everything satisfactorily, to which defendant replied that it was not necessary; that the receipt would show that he had paid; but that, upon plaintiff's insisting, he told him he would do so as soon as he could, and that he did see Mr. Hall in a short time, and told him that everything was satisfactory. Mr. Hall left soon after these transactions, and did not return until the spring following. Mr. Diserens testifies: That plaintiff told him in December that he had settled everything with Mr. Hall, and for that reason Diserens did not discharge him at the end of the 30 days. That, when Mr. Hall returned in the spring, he said " 'I see you have Mr. Hollenbeck with you.' I said, 'Yes, he told me that it was by your consent that he was to remain.' * * * Mr. Hall says: 'Well, he is a liar. We don't want him anyhow. Let him go.' " Whereupon plaintiff was discharged.

II.   This is the second appeal in this case (see 105 Iowa, 489), and this same alleged libelous publication was under consideration in *Hollenbeck v. Hall*. 103 Iowa, 214.   Appellant's counsel say: "There are six points we desire to present:   First.   The letter claimed to be libelous is a privileged communication.   Second.   Plaintiff was not discharged by reason of the letter.   Third.   There is no malice proven on the part of defendant.   Fourth.   The court erred in not giving the instructions, and each of them, asked by defendant.   Fifth.   The verdict is contrary to the evidence and the fourth instruction given by the court on its own motion.   Sixth.   Where a defendant, by means which are not unlawful, induces a third person to do an act which is not unlawful, but is injurious to the plaintiff, no action will lie for damages and the motive of the defendant is immaterial."   In support of the first point appellant insists that there is no dispute but that the plaintiff owed and refused to pay the bill, and that he intended to plead the statute of limitations against it; that the letter was written at the instance of Mr. Hall; that Mr. Hall intended to discharge the plaintiff, and asked for this letter as an excuse; that defendant did not know that Mr. Hall would send this letter to the superintendent, and order plaintiff's discharge; and that the statements in the letter are true.   Plaintiff—whether justly so or not—was disputing the account upon the grounds that he was charged with a social visit made by Dr. Ristine, and that he was to pay Dr. La Grange, who was to settle with Dr. Ristine.   It does not appear that plaintiff intended to plead the statute of limitations.   He did not do so to the action that was brought, and what was said on that subject was by his attorney as inducement to a settlement.   It is clear, however, that the defendant believed that this defense would be pleaded, if another action were brought, when he wrote the letter.   Whether the letter was written at the instance of Mr. Hall to give him an excuse to discharge the plaintiff is certainly questionable.   He needed no excuse,

and, so far as appears, had no reason for and did not desire to discharge this "old and trusted conductor," aside from the complaint made by the Drs. Ristine. Mr. Hall would probably never have known of this matter had it not been told him by Dr. Henry Ristine, who, no doubt, felt about it as the letter shows the defendant felt when he wrote. The letter of defendant to Mr. Hall leaves little room to doubt that the writer sought the removal of the plaintiff, and the letter of Mr. Hall shows that it was accomplished by a threat that the Ristines would withdraw from the services of the company if the plaintiff was not discharged. The conclusion is fairly warranted that, incensed at the conduct of the plaintiff, the Drs. Ristine brought their complaint to the notice of Mr. Hall, either as a means of inducing plaintiff to pay the debt, or for the purpose of causing his discharge, or both; and that Mr. Hall, preferring to act upon written complaint, asked the defendant to put it in writing. Appellant cites *Rude v. Nass,* 79 Wis. 321 (48 N. W. Rep. 555); *Billings v. Fairbanks,* 136 Mass. 177, and *Long v. Peters,* 47 Iowa, 239, wherein the alleged slanderous communication was held to be privileged. They were so held because spoken in response to inquiries made by one who had a right to inquire. In *Long v. Peters, supra,* the words were spoken to the mother of the plaintiff in response to inquires made by her, and this court said: "When information of that character is sought by parents, the person inquired of must be permitted in good faith to state facts, and his *bona fide* belief." These cases are not authority for holding this communication privileged, and what we have said disposes of the appellant's claim that plaintiff was not discharged by reason of the letter, and that there was no proof of malice on the part of the defendant.

III. Appellant does not point out in argument wherein it is claimed the court erred in refusing the instructions asked by him, and, after careful comparison of those asked with the instructions given, we fail to discover any error.

We think, in so far as those asked were proper under the issues and facts, they were fully covered by the instructions given. In this connection we notice appellant's complaint of the fourth and fifth instructions given. In the fourth the jury was told, in effect, that, if defendant wrote the letter with intent to cause the plaintiff to be discharged, or for the purpose of causing the plaintiff to pay the account, or to be discharged if he did not, and that the letter was written because the plaintiff failed to pay the account, "and if you find that said letter did cause plaintiff to lose his position and employment, and that plaintiff sustained damages thereby, then the plaintiff will be entitled to recover herein." The contention is that this instruction is incorrect, for the reason that "any person may advise another to discharge an employe with or without reason, and, if the employe is discharged, no action lies." This is not true, however, where the advice is accompanied with libelous charges against the employe. Complaint is made against the last six lines of the fifth instruction wherein the jury was told, "And if you find that when the defendant wrote said letter he was not actuated by a feeling of ill will towards the plaintiff, and did not design to inflict a wrong or injury upon the plaintiff, and did not desire to serve a purpose of his own, then said letter would be a privileged communication, and plaintiff could not recover." We fail to discover any error in these lines, taken in connection with the other parts of the instruction against which no complaint is made.

IV. Appellant's remaining contention is bottomed on the thought that he did not act unlawfully in inducing Mr. Hall to discharge the plaintiff, and therefore no action will lie. He says: "The proposition, stated in another way, is, if a man writes of another anything which is not defamatory, it is not wrongful, or unlawful, and no action will lie because the writer had a malicious intent." On the former appeal we quoted with approval from Cooley, Torts, (2d

Ed.) 242, as follows: "Besides the publications mentioned [referring to those libelious per se], any untrue and malicious charge which is published in writing or printed is libelous when damage is shown to have resulted as a natural and proximate consequence." It is said in argument that Hall had the right to discharge the plaintiff at any time, with or without cause; that, if there was any injury by reason of the discharge, Hall alone was the author of it." The fault of this argument is in assuming that Hall alone was the author of the discharge. We think it is clear that he discharged the plaintiff because of the communication. Appellant relies largely upon *Allen v. Flood,* decided by the house of lords in 1897, and found in 67 Law J. Q. B. Div. 119. That case was very extensively considered, but a brief reference to its facts will show the distinction between it and this case. In that, boiler makers in common employment with the respondents, who were shipwrights working on wood, objected to work with the latter on the ground that in a previous enmployment they had been engaged in ironwork. The appellant, an official of the boiler maker's union, in response to a telegram from one of the boiler makers, came to the yard, and dissuaded the men from immediately laying down their work, as they threatened to do, indicating that, if they did so, he would do his best to have them deprived of the benefits of the union, and also fined. They must wait until the matter was settled. The appellant then saw the managing director, to whom he said that if the respondents, who were engaged from day to day, were not dismissed, the boiler makers would leave their work or be called out. The respondents were thereupon dismissed. "Held, by six of their lordships as against three, that no actionable wrong had been committed by appellant." In that case the appellant made no malicious charge against the complainants. There was no evidence of threat or coercion. We think the case is not in point, and, if it were, that the rule announced in the former appeal is well sustained by the authorities of this

country, and we see no reason to depart from it. In *Martens v. Reilly,* 109 Wis. 454 (84 N. W. Rep. 840), the fifth paragraph of the syllabus "by the judge" is as follows: "(5) The violation of a contract is an unlawful act. Therefore, if one or more persons conspire with another to commit, or two or more persons combine together to effect, such violation, and the object of the combination be consummated to the damage of the third person, such third person has his action to recover the damages against him who breached the contract, and every person, who, by reason of the combination, is connected with the wrong." In that case a conspiracy to wrong was alleged, but the principle announced is alike applicable where the wrong is committed by a single individual. *Moran v. Dunphy,* 177 Mass. 485 (59 N. E. Rep. 125), was an action to recover of defendant for making statements to one Cowan, by whom plaintiff was employed, of such a character that Cowan discharged the plaintiff. The appeal was from the ruling sustaining defendant's demurrer. The court, after citing many authorities, says: "We cannot admit a doubt that maliciously and without just cause to induce a third person to end his employment of the plaintiff, whether the inducement be false, slanderous, or successful persuasion, is an actionable tort. * * * We apprehend that there no longer is any difficulty in recognizing that a right to be protected from malicious interference may be incident to a right arising out of a contract, although the contract, so far as performance is concerned, imposes a duty only on the promisor. Again, in the case of contract of employment, even when the employment is at will, the fact that the employer is free from liability for discharging the plaintiff does not carry with it immunity to the defendant, who has controlled the employer's action to the plaintiff's harm." As directly in point, see *Angle v. Railroad Co.,* 151 U. S., 1 (14 Sup. Ct. Rep. 240, 38 L. Ed. 55). The court, speaking through justice Brewer, said: "It has been repeatedly

held that, if one maliciously interferes in a contract between two parties, and induces one of them to breach that contract to the injury of the other, the party injured can maintain an action against the wrongdoer." We think the verdict is in harmony with the instructions, and fairly sustained by the evidence. As we discover no prejudicial error in any of the respects complained of, the judgment of the district court is AFFIRMED.