# FALSTAFF BREWING CORPORATION v. IOWA FRUIT & PRODUCE CO.

## No. 11478.

Circuit Court of Appeals, Eighth Circuit.

May 21, 1940.

W. C. Fraser, of Omaha, Neb. (W. M. McFarland and Crofoot, Fraser, Connolly & Stryker, all of Omaha, Neb., on the brief), for appellant.

Milton R. Abrahams and John L. Barton, both of Omaha, Neb. (Abrahams, McGrath & Frenzer and Crossman & Barton, all of Omaha, Neb., on the brief), for appellee.

Before STONE, GARDNER, and SANBORN, Circuit Judges.

STONE, Circuit Judge.

This is an appeal by the defendant from a judgment on verdict for $7,350 for breach of contract and for conspiracy to breach a sales agency contract and to harm the business of the plaintiff.

To furnish the setting for this controversy, a brief outline of the facts is given—stating such, of course, in the view favorable to appellee. Plaintiff (appellee) was engaged, at Council Bluffs, Iowa, in a wholesale business, handling fruits, vegetables and specialties. It had a two story building with railroad connections, loading and shipping facilities and refrigerated rooms. Among the specialties handled by it was near beer. About 1917 or 1918, it commenced handling such products of the Potosi Brewing Company; and, after sale of beer became legal in Iowa (in 1933), it sold the beer of this brewery, as wholesale agent, in about twenty counties in southwestern Iowa. This beer business progressed until plaintiff had about two hundred regular customers for this Potosi beer, by May, 1935.

About the middle of May, 1935, defendant requested plaintiff to take the exclusive wholesale agency for Falstaff Beer (brewed by defendant) in certain counties (then being served by plaintiff with Potosi beer) in southwestern Iowa. The particular concern of defendant was the sale of pint bottles of beer, which it was selling for retailing at a lower price than other beers. The situation of plaintiff as to its agency for Potosi beer was explained to defendant and it was told that plaintiff would not "sidetrack that company's business". It was agreeable to defendant that it should have "a square deal" as to bottled beer and that plaintiff "would not endeavor to change any customers purchasing Potosi draft beer unless they voluntarily wanted to change over to Falstaff." With this understanding, an oral contract was made for such exclusive agency for Falstaff beer for one year with estimated average sales of 2,000 cases a month.

At the time this contract was made, plaintiff had three employees (Pickrell, Musgrove and Strother) who, respectively, devoted part or all of their time to sales of beer. Each of these had personal acquaintances and contacts with customers—a matter of much importance in selling beer. Plaintiff put the sale of Falstaff beer in charge of these same salesmen who offered both Potosi and Falstaff brands. The average sales required by the contract were complied with as well as all terms except the promptness in paying for some shipments—however, these failures were taken care of and waived so that there was no violation of the contract existent on December 6, 1935.

On that date, plaintiff received a letter from defendant (dated December 4th) informing him that "effective December 5th we have appointed another distributor to take over the territory which had formerly been allotted to you." The new distributor was J. B. Christensen who had, theretofore, been selling beer (under a State retailer's license) at a place called Miami Club, located in or near Council Bluffs. Immediately, Christensen took over the Falstaff business employing the same three above salesmen who had been theretofore working for plaintiff. The State wholesale license for this distributing business of Christensen was taken out in the name of one of the men, Musgrove.

The petition sets forth the contract; and performance on the part of plaintiff until December 4, 1935, when defendant, without cause, withdrew the agency as of the next day. The allegation is that this withdrawal, constituting a breach of the contract, was the result of a conspiracy between the defendant and Christensen. It is further alleged that in pursuance of this conspiracy Christensen was given the exclusive sales agency in place of the plaintiff and that a few days later and for the effective carrying out of and as a part of such conspiracy, the conspirators hired away from the plaintiff the three employees who had been engaged in the sale of this and Potosi beer for plaintiff; that these employees constituted practically the entire sales force of plaintiff in the sale of beer and that they were placed by defendant upon the same routes to serve the same customers and trade as when they were with plaintiff. As a result of the breach of the contract and of the conspiracy plaintiff prayed $3,000 damages for loss of profits; $25,000 damages for diminution and destruction of its business; and $25,000 exemplary damages—a total of $53,000.

The answer of defendant denies all essential averments of the petition and states a counterclaim for $689.87 as a balance for beer and cooperage sold to plaintiff.

The charge took from the jury a consideration of exemplary damages and the verdict was to plaintiff for $7,350 damages and to the plaintiff upon the counterclaim. Defendant appeals.

Appellant argues here nine matters which may be generally grouped under five headings as: Insufficient evidence; right to cancel contract; no conspiracy to injure plaintiff's business; erroneous admission of one item of evidence; and claimed error in the charge to the jury on the subject of damages.

#### Insufficiency of Evidence.

As to the insufficiency of the evidence, appellant levels its argument at five specific matters as to each of which it claims there was no substantial evidence. These matters are as follows: Participation of appellant in any conspiracy; any improper cancellation of contract; any improper hiring away of servants of appellee; as to actual damages, and as to evidence sufficient to defeat the counterclaim.

The matters of participation in conspiracy, cancellation of the contract and hiring away of the servants may be treated in one statement of the evidence. Naturally, such statement is made from the standpoint of all evidence and proper inferences therefrom which are favorable to appellee. So considered the evidence justifies the following statement as to the situation.

That a contract was entered into whereby appellee became the exclusive sales agent of appellant in the designated territory for one year with average sales requirement and with other conditions not necessary to set forth. That this contract was fully complied with up to the time of its termination by appellant, with the exception that some payments due from appellee were not promptly made but as to these no point was made, the appellant continuing to ship beer thereafter and the account between the parties being brought to a satisfactory condition before and at the time of the termination of the contract.

That a representative of appellant was a party to an understanding whereby this agency would be taken from appellee and transferred to Christensen. That in the working out of this understanding and to make it effective Christensen, with the knowledge and active approval of appellant's agent, hired away from appellee, without its knowledge, the employees who had been actively engaged in the sale of beer for appellee in this territory. That the effectiveness of sales of beer depends almost entirely upon the personality of the salesman, his acquaintance with the territory and with the trade therein. That the results of these acts were that appellee was deprived of its agency without just cause and was seriously crippled in its business or ability to protect itself by the loss of these salesmen who had built up and upon whom depended the entire beer business of appellee.

■ The above evidence is entirely sufficient to justify a verdict of the jury that there was a conspiracy, in which appellant was a party, to breach this contract with appellee and to destroy his business of selling beer which had been built up in this territory and consisted not only of the brand handled for appellant but of another brand known as Potosi.

■ Appellant contends that it had a right to terminate this contract because it was indefinite as to duration and quantity to be purchased and because it had not been performed by appellee. The evidence as to the contract is that it was for a definite period of one year with an estimated average minimum of 2,000 cases per month. The well nigh undisputed evidence is that appellee performed its part of the contract with the above noted exception as to prompt payment which was waived by the conduct of appellant and entirely cured before and at the time appellant terminated the contract. This was an agency not a sales contract.

■ The evidence concerning damages, both through loss of profits on this contract and through injury to the business of appellee by the hiring away of its employees, seems sufficient. As to damages through loss of profits from the breach of the contract, the evidence is necessarily not exact. Ordinarily, loss of profits cannot be precisely shown. All that is necessary is to show a state of facts where it is reasonable to infer there would be a loss of profits and where the amount of such loss is shown approximately. This contract was breached after being in force almost exactly six months out of the contract year. The evidence showed the number of cases of bottled beer and of other character of beer sold by plaintiff during these first six months, with the price and the profit. There were 16,956 cases thus sold (as admitted by the answer) upon which a profit of thirty-nine cents per case was made, resulting in a total profit on bottled beer of $6,612.84. This beer cost $20,516.76. The total amount of beer of all kinds bought by ap-

pellee cost $22,370.46. The difference between these amounts is $1,853.70, which represents the cost of other than bottled beer. Upon that character of beer a profit of thirty to thirty-five per cent was made which, calculated at thirty per cent, would make a profit of $556.11. This amount added to the above profit on bottled beer would make a total profit during the six months of $7,168.95. The word "profit" as used above represents simply the difference between cost and sale price and does not allow for the merchandising expense of appellee in connection therewith. However, the record contains exhibits showing the payroll and various other expenses of the business—which included, also, mainly a vegetable and fruit business, and the evidence shows various expenses applicable to the beer business and various allocations of time of employees and use of equipment and plant to that business. We have not endeavored to reduce exactly the results of these exhibits and this related testimony but a careful study thereof convinces that they cannot be large enough to affect the situation that decidedly more than the $3,000 (claimed as loss of profits) was clear net profit to appellee in this beer business for the first six months of the contract year. It is undisputed that in the normal run of business, the second six months would not result in as heavy sales because a part of those six months cover the cold portion of the year when less beer is bought. However, there is evidence as to the exact number of cases of bottled beer sold during that time by Christensen who took over this agency. All of these sales were made by the same salesmen who had acted during the first six months in the same territory for appellee and Christensen testifies that he, personally, made practically no sales, leaving that matter to these salesmen. There is no reason to believe that approximately the same sales would not have been made had there been no change in the agency. They amounted to approximately two-thirds of the amount of sales made by plaintiff during the first six months of the agency contract. From all of this evidence, it is clear that there was a proper basis in the evidence for the jury to have found the full amount of damages ($3,000) sought by appellee for the loss of profits arising from breach of contract.

As to damages arising from injury to plaintiff's business through hiring its employees, the evidence is not precise. This is naturally and necessarily true from the very character of the injury. However, this does not mean that no recovery can be had. It is enough if the injury is shown and if the damages assessed are in reasonable relation thereto. This character of injury is a tort. Hollenbeck v. Ristine, 114 Iowa 358, 86 N.W. 377, 380. Damages for tort injuries are rarely ascertainable in any accurate sense—they are rather matters of reasonable proportions, considering all of the circumstances of the case (Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562-566, 51 S.Ct. 248, 75 L.Ed. 544) and are, ordinarily, questions for the jury (same, 282 U.S. page 566, 51 S.Ct. 248, 75 L.Ed. 544). However, the situation shown is that appellee had a well organized existing trade worked up both as to Falstaff and as to Potosi beer; that most of the Potosi trade was draft beer; that his method of handling the two brands was to push the Falstaff bottled beer with little interference with the Potosi draft beer. When the agency was changed this situation disappeared and Christensen sought to replace the Potosi draft beer with the Falstaff draft beer. Even when these employees returned to appellee they were unable to undo this work of replacement and the record shows a pronounced diminution of sales of Potosi beer in this district during the years 1935, 1936 and 1937. When these salesmen sought to rebuild the Potosi business for appellee they were generally unsuccessful, being met with the expression that they had caused Falstaff to be substituted and that the dealers were satisfied with that brand and saw no reason to change. That the action of Christensen in hiring away appellee's employees and using them effectively to destroy this Potosi business was the main cause of this reduction of that business and the resulting injury and loss to appellee is clear in the evidence. Considering this situation and the large reductions in this Potosi business, the finding of the jury on that item is justified and not out of line at all as to amount.

As to the counterclaim, the contention of appellant relating to insufficiency of evidence is that the balance set forth in the counterclaim was admitted but that this was sought to be overcome by certain cooperage allowances and that such allowances were not sufficiently proven.

The situation as to cooperage was: that the bottled beer was delivered in cases or other containers—such bottles, cases and containers being denominated cooperage—and that a charge against appellee was included to cover this cooperage which could be met by return of the cooperage. The custom of appellee and of the trade was for this cooperage to be picked up from the customer at the time new consignments of beer were delivered to him, the cooperage then being returned to appellant. At the time the contract was suddenly terminated a large amount of this cooperage was in the hands of customers. The very day the contract was terminated the new agent, Christensen, took up the business of delivering beer and collecting cooperage (charged against appellee) from these former customers of appellee. While the books of appellant credit appellee with a relatively small amount of returned cooperage which might be applicable to the counterclaim balance, yet the evidence is clear that there was no real effort, if any effort at all, made to distinguish or segregate this old cooperage from that which Christensen had delivered after he took over the agency and the evidence does show that Christensen picked up all cooperage in regular course of business with these customers from the time he began serving them. Appellee was at a decided disadvantage in following or collecting the cooperage with which he was properly charged while the new agent and appellant had every facility possible for knowing this as accurately as it could be followed in the nature of things. Although necessarily indefinite because of this situation, the evidence was sufficient to justify the verdict of the jury as to the counterclaim.

### Right to Cancel Contract.

*Right to cancel contract.* Appellant contends it had the legal right to cancel the contract because it lacked necessary definiteness and mutuality; because of lack of authority of its agent to make a contract for a definite period; and because of failure to perform by appellee.

 The agreement is said by defendant to lack definiteness and mutuality because plaintiff did not agree to purchase or distribute any specific quantity of beer. Petersen (owner of plaintiff) testified that Lichty (agent for defendant) asked him what quantity he thought they could distribute in number of cases, and Petersen told him, "I thought about an average of 2,000 cases per month", and Lichty said that was satisfactory, and that "he didn't expect me to go that high on my estimate." Whether or not this is an agreement to purchase a definite or approximate quantity is not important here. This is not a contract of sale, but one of sales agency. A contract of sales agency is not void for uncertainty, indefiniteness, or lack of mutuality, so called, because no definite quantity is named in the contract. Marrinan Medical Supply Co. v. Fort Dodge Serum Co., 8 Cir., 47 F.2d 458, 462; E. I. DuPont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 228, 89 A.L.R. 238, certiorari denied 290 U.S. 646, 54 S.Ct. 64, 78 L.Ed. 561. In such contracts, "uncertainty as to amount is inherent in their very nature. Where territory is to be exploited and orders to be solicited by salesmen, the number and amount of such orders cannot, of course, be foretold. They can be determined only by the potential demand of the territory and the diligence of the salesmen. Contracts of factorage or sales agency are not invalid for such uncertainty, and we hold that the present contract is not on that account invalid." Marrinan Medical Supply Co. v. Ft. Dodge Co., supra, 47 F.2d page 462. Defendant's argument to the effect that the lack of an agreement to take or distribute a specific quantity makes the agreement uncertain cannot be sustained nor can the argument that it was not to endure a definite period be given validity—because there is evidence that it was to continue for a year.

 The second reason—lack of authority of the agent of defendant—is not properly before us. The answer: "admits that its agent, Howard Lichty, negotiated with the plaintiff regarding the plaintiff acting as an agent in the sale of defendant's products, and that as a result of said negotiations an oral agreement was entered into." Such lack of authority to make the particular contract alleged in the petition was not raised in the pleadings, the evidence or objections thereto, requests to charge nor objections to the charge. The motion for directed verdict was general in form. An elaborate motion for new trial was filed with no mention of this point. A point never presented to the trial court cannot be raised on appeal for the first time. Booth v. Gilbert,

8 Cir., 79 F.2d 790, 792; Atlantic Brewing Co. v. William J. Brennan Grocery Co., 8 Cir., 79 F.2d 45, 47, 48.

The third reason—failure of plaintiff to perform—raises an issue of fact which is determined against appellant, since there was evidence of complete performance, except as to promptness of payments and, as to such payments, evidence of waiver or forgiveness.

## No Conspiracy to Injure Plaintiff's Business.

The petition alleged a conspiracy between Austin (territorial manager of sales for defendant) and Christensen: "for the purpose and with the intent of wrongfully breaching and extinguishing said contract, depriving the plaintiff of its rights thereunder, transferring said rights and benefits accruing therefrom to said Christensen, and crippling and destroying plaintiff's business." That in continuance and as a part of such conspiracy, Strother, Pickrell and Musgrove were induced to leave the employment of plaintiff and enter that of Christensen. That defendant knew these men were valuable, experienced and trusted employees of plaintiff and that loss of them would seriously injure and disorganize its business and they were employed to acquire for Christensen the business they had formerly held for plaintiff.

The evidence (favorable to plaintiff) showed it proceeding under an exclusive sales agency contract with defendant which had about six months to run. That it was operating its sales agency through these three men who had for years been in contact and acquainted with the customers. That such acquaintance and contact are of controlling importance in the sale of beer. That these were the only beer salesmen of plaintiff. That they had for years, before taking on Falstaff beer, built up a good trade in Potosi beer. That the agency involved promotion of bottled Falstaff beer but no effort to replace Potosi draft beer with Falstaff draft beer. That plaintiff was performing its contract of agency. That defendant was familiar with the above situation and facts. That it, surreptitiously, arranged for a sudden transfer of this agency (involving a breach of its contract with plaintiff) to Christensen. That it and Christensen concerted to have Christensen hire away all of the beer salesmen of plaintiff. That it cooperated to secure the necessary State wholesale license in the name of Musgrove (one of the employees) as Christensen was not eligible to hold such license. That the three employees were so hired to and did cover the customers, whom they had theretofore served for plaintiff. That the change was made overnight with no previous warning to nor knowledge of plaintiff. That plaintiff's business in sales of Falstaff beer was entirely and abruptly lost and his business in sales of Potosi beer seriously injured.

Concisely, the picture made by this evidence is of an established sales business in two brands of beer where bottled beer was being pushed as to one brand and draft beer as to the other. The personnel of sales force long established and familiar with the trade in a character of business where such familiarity was of prime importance. A combination of individuals engineered by defendant for the purpose and having the effect of unlawfully breaching the sales agency contract as to one brand and, without warning, suddenly transferring the entire sales force to the new distributor.

Appellant contends there was no conspiracy or, at least, none involving it. For this it relies on evidence favorable to appellant. It is our duty to adopt the evidence favoring appellee. This is not an instance simply of one party to a contract breaching it. The breach of this contract was merely an essential element in a situation involving the establishment of a new sales agency. The arrangements for the new agency were made before any breach. These arrangements necessitated the joint action, at least, of Austin and of Christensen and there is evidence which would justify the conclusion that yet others were parties thereto. Carrying out of such arrangements depended upon the unlawful breach of the contract. Clearly, such combined action was a conspiracy. Clearly, it was a conspiracy which contemplated an unlawful act—the breach of a contract then in force and then being performed by plaintiff.

Appellant places great reliance, as to existence of a conspiracy, upon Olmsted v. Maryland Casualty Co., 218 Iowa 997, 253 N.W. 804. In so far as that decision is applicable, the inference therefrom favors appellee. That was an instance where an insurance company, under written provisions in a general agency contract, *lawfully* cancelled the contract and *thereafter*

made contracts with some of the local agencies with which the former general agent had placed such business during the time the general agency contract was in force. That appeal turned on the issue of "whether anything was done pursuant to the alleged conspiracy which is actionable" (253 N.W. page 804). The court declared it was "committed to the rule that a conspiracy cannot be the subject of a civil action unless something is done pursuant to it which, without the conspiracy, would give a right of action" (253 N.W. page 804). The court determined then (253 N. W. page 807): "A conspiracy cannot be inferred from the record, because nothing was done by the alleged conspirators which was unlawful. The casualty company had the absolute right to end the contract. After the termination of the general agency contract, the casualty company had a perfect right to secure a sub-agency force by the means which it used."

Here, breach of a lawful existing contract was a prime purpose of the conspiracy. Procuring breach of a contract is an unlawful act subject to civil suit (Kock v. Burgess, 167 Iowa 727, 149 N.W. 858, 860) and a conspiracy to cause breach of contract is actionable (Holsinger v. Herring, 207 Iowa 1218, 224 N.W. 766).

■■■■■ Another related contention is that the acts, in pursuance of the conspiracy, of hiring plaintiff's sales force were not actionable because the employments by plaintiff were for no definite periods but were terminable at will. In normal business competition it is true that it is no actionable wrong to employ one who is working for a competitor. But that is not the situation here.

Defendant had contracted for an exclusive sales agency to plaintiff covering this territory. That contract was in full force. Defendant had no right to engage in any sort of competition with plaintiff in that territory. What it did was to kill all competition in Falstaff beer and, by hiring plaintiff's entire beer sales force, endeavor to kill all competition with Potosi beer. A purpose of the conspiracy was effectually to ruin the entire beer business of plaintiff. The means to accomplish such purpose were well chosen. The hiring of these men was nothing less than a movement to make fully effective the unlawful act of breaching the contract. Even if the hiring of these men was, standing alone, lawful, such was part and parcel of a conspiracy to do an unlawful thing and, in such situation, loses any innocent character. Swift & Co. v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518.

However, the hiring was a malicious attempt to ruin the beer business of plaintiff and as such is actionable. This contention of appellant is not sustained. Hollenbeck v. Ristine, 114 Iowa 358, 86 N.W. 377, 380, 381; Wissmath Packing Co. v. Mississippi River Power Co., 179 Iowa 1309, 162 N.W. 846, 852 second column, L.R.A. 1917F, 790; Kock v. Burgess, 167 Iowa 727, 149 N.W. 858, 860; Johnson v. Aetna Life Ins. Co., 158 Wis. 56, 147 N.W. 32, 33, 34, Ann.Cas.1916E, 603. The requisite malice is here existent. Bitterman v. Louisville & Nashville R. R., 207 U.S. 205, 222, 223, 28 S.Ct. 91, 52 L.Ed. 171, 12 Ann.Cas. 693.

### Admission of Evidence.

■■■■■ Appellant contends that prejudicial error was committed when the court permitted appellee to introduce in evidence Sections 1921-f98 and 1921-f101, of the Code of Iowa, 1935. These sections set forth three classes of permits or licenses to sell beer of which one is for wholesale and another for retail sales. The statutory provision also makes it unlawful for any person to be directly or indirectly interested in more than one class of permit. The evidence having to do with this situation is that Christensen had a permit to sell beer retail before and at the time this conspiracy arose. As a sales agent of appellant, it would be necessary for him to have a permit to sell beer wholesale. To meet this situation when he sought to take over this sales agency, the arrangement was for one of the employees (Musgrove) hired away from appellee to take out a wholesale permit under which Christensen would operate.

This evidence was competent in connection with the establishment of the conspiracy and the hiring away as alleged in the petition.

### Charge to Jury.

■■■■■ The contention of appellant concerning the charge to the jury is aimed at that part of the charge which informed the jury that if it found the defendant had entered into the conspiracy to injure appellee's business and if they further found that plaintiff's Potosi beer business was injured and impaired and damaged by reason of the commission of these acts by

appellant, then it might assess damages therefor. The attack of appellant is that such loss or damage would be "remote, speculative, and there is no sufficient evidence to show any Potosi business lost by reason of any act of the defendant, and no evidence showing with reasonable certainty any profits that would have been made."

Considering the place of this Potosi beer business in the situation affected by appellant's acts, damage on account thereof is not (as discussed hereinabove) too remote or speculative. As stated hereinabove, the evidence was sufficient to show the damages through loss of profits on this business since the amount of loss of sales of Potosi beer is shown and the rate of profits.

### Conclusion.

The judgment should be, and is, affirmed.