399 F.Supp. 93 (1975)
Sidney SALOMON, Jr., and Sidney Salomon, Jr. & Associates, Inc., a corporation, Plaintiffs,
and
Portnoy-Tessler & Associates, Inc., a corporation, Plaintiff-Intervenor,
v.
CROWN LIFE INSURANCE COMPANY, Defendant.
CROWN LIFE INSURANCE COMPANY, a corporation, Plaintiff,
v.
SIDNEY SALOMON, JR. & ASSOCIATES, INC., a corporation,
and
Insurance Consultants, Inc., a corporation, d/b/a "Sidney Salomon, Jr. Life Assurance Agency", Defendants.
Nos. 72 C 547(3) and 72 C 582(3).
United States District Court, E. D. Missouri, E. D.
March 4, 1975.
*94 Lon Hocker, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, Mo., for Crown Life Ins. Co.
Thomas J. Guilfoil and Jim J. Shoemake, St. Louis, Mo., for Sidney Salomon, Jr. and Sidney Salomon, Jr. & Associates, Inc.
T. Terence Crebs, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., for Portnoy-Tessler & Associates, Inc.

MEMORANDUM
WANGELIN, District Judge.
This action is before the Court for a decision on the merits following the trial to the Court sitting without a jury.
Plaintiffs, Sidney Salomon, Jr., and Sidney Salomon, Jr. & Associates, Inc., (herein plaintiffs Salomon) initiated this action (No. 72 C 547(3)) alleging tortious interference with business relations, and seeking to restrain and enjoin the defendant, Crown Life Insurance Company, (herein defendant Crown) from using plaintiffs Salomon's business records and for actual and punitive damages. In the related case (No. 72 C 582(3)), plaintiff Crown seeks to require defendants Salomon and Insurance Consultants, Inc., d/b/a Sidney Salomon, Jr. Life Assurance Agency, to deliver certain records, to prohibit the use of said records, and damages.
Portnoy-Tessler & Associates, Inc. (herein Portnoy) was granted leave to intervene as party plaintiff in No. 72 C 547(3).
The cases were consolidated and tried before this Court.
For the sake of simplicity, the Court's opinion will deal with the causes of action *95 in three parts. The findings of fact and conclusions of law concerning Salomon and Crown in No. 72 C 547(3) will be separately stated as will findings of fact and conclusions of law for Portnoy and defendant Crown. No. 72C 582(3) will be dealt with as a separate entity.
The Court being fully apprised of the premises hereby makes the following findings of fact and conclusions of law.

Findings of Fact

Sidney Salomon, Jr., et al.,

vs.

Crown Life Insurance Company

No. 72 C 547(3)
1. This Court has jurisdiction over the subject matter of this suit and the parties hereto pursuant to 28 U.S.C. § 1332.
2. Plaintiff, Sidney Salomon, Jr., is an individual residing in St. Louis County, Missouri, and plaintiff, Sidney Salomon, Jr. & Associates, Inc., is a corporation organized under the laws of the State of Missouri, having its principal place of business in St. Louis County, Missouri.
3. Defendant, Crown Life Insurance Company, is a life insurance company organized by an act of the Canadian Parliament, with the principal place of business in Toronto, Canada. Defendant Crown commenced the sale of life insurance in the State of Missouri in 1946.
4. At all times since 1946, plaintiff, Sidney Salomon, Jr., was a broker on behalf of Crown and operated a general insurance agency by appointment of Crown under the following legal entity names: Portnoy-Salomon and Company; Salomon, Hannegan, Portnoy & Associates, Inc.; Sidney Salomon, Jr. & Associates, Inc.; Sidney Salomon, Jr. Life Assurance Agency; a joint venture comprised of Sidney Salomon, Jr. & Associates, Inc. and Insurance Consultants, Inc.
5. Since 1946, plaintiffs Salomon's method of sales and promotion in the life insurance business has remained unchanged and the relationship between plaintiff, Sidney Salomon, Jr., and defendant, Crown Life Insurance Company, continued uninterrupted until 1972.
6. Plaintiff, Sidney Salomon, Jr., was and is a well-known national personality in the fields of business, sports and politics, and is active in educational, civic and charitable endeavors locally and throughout the United States. Through favorable publicity and the adoption of the "center of influence" method of selling, plaintiff, Sidney Salomon, Jr., without financial contributions from defendant Crown, conducted advertising and promotional campaigns to bring recognition to defendant Crown and to enhance the sale of life insurance to Crown's benefit.
7. As a result of the activities mentioned in the previous paragraph, plaintiff, Sidney Salomon, Jr., developed a very successful life insurance sales business. As a result of these endeavors plaintiff, Sidney Salomon, Jr., and the corporate entities as described in finding of fact paragraph number 4. received numerous awards as one of the top insurance agencies of defendant Crown.
8. At their own expense, plaintiffs Salomon recruited and trained life insurance agents, brokers and administrative personnel including Robert V. Klostermeyer, James T. Blair, III, and W. Andrew Bradley.
9. Klostermeyer was recruited by plaintiffs Salomon in 1961 and from that date was a broker and administrative employee of the general agency. Blair was recruited by plaintiffs Salomon in 1957 and received compensation through August 1, 1972. Prior to November 15, 1970, W. Andrew Bradley was an employee of defendant Crown and entered the employ of plaintiff, Sidney Salomon, Jr., & Associates, Inc., as an administrative employee and broker and received compensation therefor.
10. Mr. Bradley was suggested as a possible employee to plaintiffs by defendant Crown. The events subsequent to his employment by plaintiffs Salomon *96 indicate to the Court that his role was to be a "Trojan Horse" for the defendant Crown to further their plans for the later termination of plaintiffs Salomon's contract.
11. As a result of the camouflaged actions of Mr. Bradley, David Williams, an officer of defendant Crown, visited Klostermeyer, Blair and Bradley in May of 1972, at plaintiffs Salomon's offices in St. Louis, Missouri. On July 6, 1972, Klostermeyer met with executives of defendant Crown in Toronto, Canada, and discussed the termination of the St. Louis general agency and entered into negotiations with defendant Crown executives for the acquisition and appropriation of the existing and future business of the St. Louis agency for defendant Crown. That St. Louis business until that time had been exclusively handled by the plaintiffs as the agents of defendant Crown.
12. On or before July 10, 1972, under express instructions from Klostermeyer, Bradley began a search for office space for the new St. Louis agency of Crown Insurance Company, while he was then in the employ of Sidney Salomon, Jr. Life Assurance Agency.
13. On July 6, 1972, Clark Lloyd, an officer of defendant Crown, made a determination to terminate the business relations that existed between plaintiff, Sidney Salomon, Jr., and the defendant Crown which had existed for a period of 26 years. After having concluded on July 6, 1972 to terminate the said business relations, Clark Lloyd met with plaintiff, Sidney Salomon, Jr., ostensively to discuss the continuation of business relations under a new format. Lloyd offered plaintiffs Salomon 25% of the profits generated by the agency under the new format and suggested that defendant Crown would run the agency, with the capital stock being held by Charles Burns, Chairman of the Board of defendant Crown. Charles Burns is a citizen of Canada.
14. On July 28, 1972, Klostermeyer, Blair and Bradley, while under brokerage contracts with Sidney Salomon, Jr. Life Assurance Agency, and while receiving compensation therefrom, formed a corporation known as Crown Associates of St. Louis, Inc., for the sale of life insurance for the defendant Crown. On August 1, 1972, Klostermeyer, Blair and Bradley passed a resolution providing compensation to each as officers of the Crown Associates of St. Louis, Inc. Crown Associates of St. Louis, Inc. filed its 1972 Income Tax Return which disclosed that 50% or more of the capital stock of Crown Associates of St. Louis, Inc., is owned by an alien.
15. On various occasions during the months of July and August of 1972, with the knowledge that Crown Associates of St. Louis, Inc. was incorporated or was in the process of being incorporated, officers of defendant Crown were in the process of encouraging and enticing Klostermeyer, Blair and Bradley to violate their fiduciary relationship with Salomon, to terminate the general agency agreement, and encouraging the acquisition of the general agency contract by Klostermeyer, Blair and Bradley. These actions being done with the knowledge that the said Klostermeyer, Blair and Bradley were performing services for, and receiving compensation from, the Sidney Salomon, Jr. Life Assurance Agency.
16. By letter dated August 9, 1972, defendant Crown terminated the Sidney Salomon, Jr. Life Assurance Agency effective 30 days after the mailing of that letter. As a member of the joint venture, said termination letter effectively terminated the business relationship that existed between plaintiffs Salomon and defendant Crown. In the event plaintiffs Salomon resisted the termination of the general agency agreement, defendant Crown was prepared to use certain political pressures to prevent him from collecting the renewal fees.
17. Defendant Crown knew that the termination of the Sidney Salomon, Jr. Life Assurance Agency, with the resulting *97 effect of effective termination of the business relationship between Sidney Salomon, Jr. and Sidney Salomon, Jr. & Associates, Inc., would, along with the acquisition by Crown Associates of St. Louis, Inc. [as new general agent] of the key personnel of the prior general agency, result in irreparable damage and injury to the plaintiffs, and knew that the plaintiffs could not continue to operate successfully.
18. For many years prior to this termination, offiers of defendant Crown represented to Sidney Salomon, Jr. that he, Sidney Salomon, Jr., could always have a general agency contract and, therefore, declined to provide a pension for him. The general agency agreement provides for vested renewals to the tenth year of premium payments and 3% of the renewals thereafter. As a result of the termination of the general agency agreement, defendant Crown knew that the promised vested renewal commissions in the amount of "3% thereafter" could not be realized by plaintiffs Salomon. The "3% thereafter" renewal commissions have been paid to Crown Associates of St. Louis, Inc. since its appointment of the new general agent.
19. Defendant Crown designated an agency code number 370 as a form of identification of the general agency known as Salomon, Hannegan, Portnoy & Associates, Inc.; Sidney Salomon, Jr. & Associates, Inc. was identified as agency code number 371; Sidney Salomon, Jr. Life Assurance Agency was designated agency code no. 372. Until the date of termination of the general agency agreement, Sidney Salomon, Jr. was the beneficiary of renewal commissions and other compensation for general agencies designated code numbers 370, 371 and 372. The actuarial value of projected compensation on renewals on insurance in force for a period of 20 years to the year, 1992, discounted to the year, 1972, was established by expert testimony and is as follows:

 Agency Code Number 370:
 Salomon, Hannegan, Portnoy &
 Associates, Inc. ................ $130,778.00
 Agency Code Number 371:
 Sidney Salomon, Jr. &
 Associates, Inc. ................ 367,680.00
 Agency Code Number 372:
 Sidney Salomon, Jr. Life
 Assurance Agency ................ 37,193.00
 ___________
 TOTAL $535,651.00

20. The average annual volume of new business of a continuing agency was established by expert testimony, as projected actuarily based upon past performance, in this case to be in the amount of $4,375,000.00. The expert actuarial evidence further showed that the value of the projected compensation for a continuing agency such as the one run by plaintiff in this case would be in the amount of $920,093.00 for a period of 20 years to the year, 1992, discounted to present values for the year, 1972.
21. The total reasonable actuarial projected computed value of compensation for a general agency such as operated by plaintiff based on a period of present and future business for 20 years is in the amount of $1,455,734.00.
22. The cost of collection of the premiums and policies in force on December 31, 1972, was in the approximate amount of $5,000 annually.
23. Each general agency agreement such as the one existing between plaintiffs Salomon and defendant Crown provided that the agreement would terminate automatically upon the death of the general agent, or the termination of the general agent's license. The agreement further provided that if it was terminated and not replaced by a new agreement between the general agent and the company, the company would pay the general agent, if living, otherwise to his executors or administrators, certain designated bonuses and renewal commissions to the tenth policy year less a scheduled collection fee.
24. The net worth of defendant Crown Life Insurance Company, as revealed *98 by its annual statement on December 31, 1972, is in the amount of $65,909,000.00.

Findings of Fact

Portnoy-Tessler & Associates

vs.

Crown Life Insurance Company

No. 72 C 547(3)
1. As stated in finding of fact number 4. for plaintiffs Salomon v. defendant Crown above, plaintiff-intervenor, Portnoy-Tessler & Associates, was a corporate entity which plaintiff, Sidney Salomon, Jr., was a shareholder.
2. Plaintiff-Intervenor's complaint alleges that defendant Crown engaged in disparate treatment of it with regards to plaintiffs Salomon. It is also alleged by Portnoy that defendant Crown has become unjustly enriched due to its activities against plaintiffs Salomon.
3. The Court finds no evidence that plaintiff-intervenor has been wronged or grieved by the actions of defendant Crown in regards to plaintiffs Salomon.
4. This Court sitting as the trier of fact is of the opinion that no wrong has been suffered by plaintiff-intervenor due to the conspiratorial acts of defendant Crown directed towards plaintiffs Salomon.

Findings of Fact

Crown Life Insurance Company

vs.

Sidney Salomon, Jr. & Associates, Inc.

and

Insurance Consultants, Inc. d/b/a Sidney Salomon, Jr. Life Assurance Agency

No. 72-582(3)
1. As stated in this Court's findings of facts for the complaint of plaintiffs Salomon, defendant, Sidney Salomon, Jr., acting through corporate entities has represented plaintiff Crown Life Insurance in the sale of life insurance since 1946.
2. Since 1946, defendant Salomon has obtained pertinent personal and confidential information from policyholders pursuant to the conduct of his life insurance business.
3. Sidney Salomon, Jr. is the owner and Chairman of the Board of Sidney Salomon, Jr. & Associates, Inc. On May 15, 1971, Sidney Salomon, Jr. & Associates, Inc. and Insurance Consultants, Inc, d/b/a Sidney Salomon, Jr. Life Assurance Agency as members of a joint venture and plaintiff Crown entered into a contract with each other. Notice of the termination of said contract dated August 9, 1972, was mailed to the defendants Salomon.
4. Said contract contained the provision as follows:
"20. All records, letters, or other documents relating to the business to be transacted under this agreement shall be open to inspection by [Crown Life Insurance Company] at any time, and, at the termination of this agreement, shall be turned over to the company together with any other of the company's property then in the general agent's possession."
5. That defendants on August 9, 1972, and until the present time have had in their possession the documents described in Schedule B of plaintiff's complaint:
A. Premium Record Card.
B. Numerical Index Cards.
C. Alphabetical Index Cards.
D. Status Cards.
E. Files of Correspondence.
F. Files of Group Insurance Records.
6. That demand for the records was made on September 11, 1972, not on either of the defendants named herein but on one Mary Cronin.
7. The records sought contain information which has been compiled by Sidney Salomon, Jr. in the operation of his various life insurance agencies over a period of approximately 25 years and consist of personal and confidential information.
8. Plaintiff Crown provided the basic forms and supplies, on which the *99 information sought is contained, but that the information contained thereon as a result of the time and efforts of Sidney Salomon, Jr. and his associates personally for a period of approximately 25 years.
9. Any information which was recorded by the plaintiff and held by defendants was of a compilation and recording nature rather than an original product of defendants.
10. The defendants have previously complied with this Court's Orders and have tendered to plaintiff Crown all those documents and records which are necessary to provide a high level of service to plaintiff's policyholders.
11. Certain records sought by plaintiff Crown were reproduced for the convenience of its general agents, herein the defendants. Those records were reproduced not for plaintiff Crown's use but for the use of the defendants.
12. All information which is presently sought by plaintiff Crown is presently maintained by means of electronic data storage in plaintiff's computer system, and is available through ordinary data retrieval methods to plaintiff by plaintiff's own employees at plaintiff's own headquarters.

General Findings of Fact
The present case, due to its complicated posture and numerous parties, does not lend itself particularly well to specific point-by-point factual analysis. Since this is a bench-tried matter the Court is faced with the dual responsibility of determining both findings of fact and conclusions of law.
As the finder of fact, the Court like a member of the jury impaneled to hear a case is allowed to draw by reasonable inferences from the admissible evidence what the facts surrounding the case are. The Court is also required to consider in its own mind the credibility of the various witnesses which testify before it. In case No. 72 C 547(3), it is overwhelmingly certain that a wrong has been done to plaintiffs Salomon. The general impression drawn from the evidence is that defendant Crown conspired with certain of plaintiffs' employees to subvert a business relationship which had existed for more than 25 years and had been extremely profitable to all parties concerned. The evidence brought forth by defendant Crown to counter the claims of plaintiffs Salomon is simply not credible to this Court.
It is obvious to the Court that defendant Crown conspired with certain of plaintiffs Salomon's employees to end the relationship which had existed between the parties for a number of years. Such a termination is certainly not wrong, and was well within the rights of defendant Crown, however, defendant Crown injured the plaintiffs Salomon by its successful subversion of plaintiff Salomon's employees and agents prior to the termination of the contract. Such subversion clearly constituted what this Court feels is a tortious interference with contractual relationships. The overall demeanor of the defendant Crown in this matter was one of underhanded and deceptive dealing. It must be noted that the Court finds no wrong in terminating the contract between the parties, the Court finds the wrong in the defendant Crown's dealing with plaintiffs Salomon's agents before the termination of the contractual relationship.
With regards to the complaint of plaintiff-intervenor, Portnoy, Tessler & Associates, Inc., the Court finds that no damage was done to plaintiff-intervenor. Plaintiff-intervenor may have suffered a diminution of income but this is due to the lawful termination of the contractual relationship between plaintiffs Salomon and defendant Crown. Even by the use of inference, the Court finds no basis for saying that plaintiff-intervenor was damaged by defendant Crown's conspiratorial actions.
In case number 72 C 582(3), the Court finds plaintiff Crown's claims for certain of defendants Salomon's records *100 to be totally without merit. The factual evidence is quite clear on its face that the records which plaintiff Crown seeks are readily available to plaintiff within its own data processing system. This combined with the obviously unclean hands of Crown Life due to its conspiratorial actions in case No. 72 C 547(3) clearly bars the equitable relief sought by plaintiff Crown Life, and the damages sought.

Conclusions of Law

I
In a bench tried case such as this, there is a two step test to be made before the plaintiff may recover. The plaintiff must first establish that according to law he has a cause of action which may be maintained. Once that question of law has been met, the plaintiff must then carry his burden of proof as to the factual questions before the Court or a jury as the case may be. In case number 72 C 547(3), plaintiffs' legal theory is that defendant Crown tortiously interfered with certain contract relations between plaintiffs Salomon and plaintiffs' employees, namely the employment as insurance agents of Messrs. Klostermeyer, Blair and Bradley by defendant Crown. It has long been held that such interference with business relations constitutes an actionable tort. 86 C.J.S. Torts § 44.
Defendant Crown has placed great emphasis on the fact that its contractual relationship with the plaintiffs was terminated pursuant to the provisions of the contract between the parties. While this is true, defendant overlooks its conduct prior to the termination of its contractual relationship with the plaintiffs Salomon. The facts are uncontroverted that defendant Crown conspired with Klostermeyer, Blair and Bradley while they were under brokerage contracts with the plaintiffs to set up a superseding insurance agency to act as the Missouri general agent for defendant. In a similar factual situation the 8th Circuit held that such a conspiracy is an actionable tort. Falstaff Brewing Corp. v. Iowa Fruit & Produce Co., 112 F.2d 101 (8th Cir., 1940). That case involved, as the present case before the Court, a sales agency contract between one party for exclusive sales within a given geographic area. The defendant in Falstaff, supra, solicited the employment of plaintiffs, three sales personnel, and thereafter dissolved the contract between plaintiffs and defendant and set up a similar distributorship employing plaintiffs' previous sales force. As the Missouri courts have also stated, a person who conspires with another to induce an unjustified violation of his contract with a third person commits an actionable wrong. Downey v. United Weather Proofing, 363 Mo. 852, 253 S.W. 2d 976 (1953); Mills v. Murray, 472 S. W.2d 6 (Mo.App. 1971). A further requirement for recovery under this theory of tort law in Missouri is that the absence of justification for the defendant's conduct must be shown. Cady v. Hartford Accident & Indemnity Co., 439 S.W.2d 483 (Mo., 1969). This view of the law of tortious interference with contract relations has been reaffirmed by the Eighth Circuit in Harber v. Ohio National Life Insurance Co., 512 F.2d 170 (8 Cir., 1975).
The factual similarity between Falstaff, supra and the present case is striking. Defendant Crown asserts that its actions were not tortious since it was merely seeking the employment of certain parties, namely, Klostermeyer, Blair and Bradley. Such competitive solicitation of other persons' employees is certainly permissible under the free market system upon which the American economy operates. However, there are certain factual distinctions which render the defendant's actions tortious. Here, Klostermeyer, Blair and Bradley set up a Missouri corporation with the encouragement of defendant Crown to be ready to take over the business of plaintiffs as soon as defendant Crown terminated its contract with plaintiffs Salomon. It is significant to the Court that the negotiations between defendant Crown and Klostermeyer, Blair and Bradley took place while those gentlemen were within *101 the employ of plaintiffs Salomon. The "Trojan Horse" nature of Mr. Bradley's actions further indicates the culpability of defendant Crown's activities. Also, the facts in this case support a reasonable inference that these activities were of a surreptitious nature and were actively concealed from the knowledge of plaintiffs.
Here, the situation is one of where valued employees and agents of the plaintiffs have served the defendant Crown for a period of twenty-five years and produced significant amounts of income as recognized and awarded by the defendant, and for some reason upon which the Court will not speculate, the defendant Crown saw fit to reward the plaintiffs by conspiring with two of plaintiffs' employees through the aid of a camouflaged servant, namely Bradley, to set up a surreptitious corporation to take over plaintiffs' business. The record produced at trial is perfectly clear that the actions of defendant Crown were without any justification.
This Court is satisfied that an actionable wrong was created by defendant Crown's conduct, and as the findings of fact amply show, plaintiffs Salomon are entitled to recovery.
The Court's computation of damages was arrived at after careful and close consideration of the voluminous expert testimony which was adduced at trial concerning the future income possibilities of plaintiffs Salomon had the contractual relationship between the parties continued. The general rule for determining damages in an action for tortious interference with business relations is that the plaintiff will be entitled to recover as damages, the loss, which, except for such interference, the plaintiff would have been able to attain or enjoy, including such loss of profits as the plaintiff can prove to have resulted directly and proximately from the wrongful acts, 45 Am.Jur.2d; Interference, § 57. The Missouri Supreme Court has adopted this general rule in Coonis v. Rogers, 429 S.W.2d 709 (Mo., 1968). Since this is not a breach of contract action, but rather one sounding in tort, the determination of damages is not subject to a precise mathematical computation. The damages are computed in accordance with the Court's sitting as the finder of fact and are in light of the Court's view of what a typical juror would have assessed had this case been tried before a jury.
"Once the fact of damage has been established courts are allowed considerable leeway in arriving at the amount of damages." Dean Foods Company v. Albrecht Dairy Company, 396 F.2d 652, 660 (8th Cir., 1968).
Plaintiffs Salomon have prayed for punitive damages in this matter, and considering the overall actions of defendant Crown concerning this matter, it is this Court's opinion that punitive damages are well warranted. Such damages have been held permissible for tortious interference actions such as the one presently at bar. Mills v. Murray, supra. It is apparent to this Court that defendant Crown's attitude towards plaintiffs Salomon, while the activities complained of were taking place, was one of concealment and deceit. Since the theory of exemplary damages is punishment and deterrence, they are particularly appropriate here. Ford Motor Credit Company v. Hill, 245 F. Supp. 796 (E.D.Mo., 1965).

II
With regards to the claim of plaintiff-intervenor, Portnoy-Tessler & Associates, Inc., it is this Court's determination that as a question of fact plaintiff-intervenor has shown no damage arising out of the cause of action of plaintiffs Salomon against defendant Crown. Accordingly, judgment will be entered for the defendant Crown upon the plaintiff-intervenor's claim.

III
In this part of the consolidated action in case number 72 C 582(3), plaintiff Crown seeks from the named defendants certain business records in the possession of defendants which supposedly relate to the life insurance business *102 of plaintiff Crown Life. As the findings of fact discussed above clearly show that defendants in this action have tendered unto plaintiff Crown those records ordered by this Court, no further relief will be granted. The denial of relief is based upon several conclusions. The first being that the records plaintiff Crown seeks are clearly not "relate[d] to the business to be transacted" under the general agency agreement between the parties, but are records related to the past and future business of defendants Salomon, containing personal and confidential information of policyholders. The facts as shown by the evidence adduced at trial clearly show that plaintiff Crown has available the records that it seeks within Crown Life's own computer system, and that those records are easily obtainable through electronic data retrieval methods. Finally, considering the verdict and the actions of plaintiff Crown in case number 72 C 547(3), is is apparent that plaintiff Crown has entered this Court with unclean hands, and, the ancient maximum that he who has unclean hands shall not recover, will be followed. Accordingly, in case number 72 C 582(3) judgment will be entered for the defendants Salomon.